## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————x

GABRIEL JOSEPH CARRERA, on behalf of
himself and all others similarly situated,       :

                 Plaintiff,       :

    vs.       :

BAYER CORPORATION and BAYER
HEALTHCARE, LLC,       :

               Defendants.       :

—————————————————————x

Civil Action No. 08-04716 (JLL)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Joe R. Whatley, Jr.
Edith M. Kallas
Patrick J. Sheehan
W. Tucker Brown
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
(212) 447-7070

Greg Davis
GREG DAVIS, LLC
6987 Halcyon Park Drive
Montgomery, AL  36117
(334) 823-9080

Howard W. Rubinstein
LAW OFFICES OF HOWARD
RUBINSTEIN
P.O. Box 4839
Aspen, Colorado 81612
(832) 715-2788

Scott E. Poynter
Christopher D. Jennings
Will T. Crowder
EMERSON POYNTER LLP
500 President Clinton Ave., Suite 305
Little Rock, Arkansas 72201
(501)  907-2555

Eric D. Wewers
LAW OFFICES OF ERIC D. WEWERS
Plaza West Building
415 N. McKinley, Ste. 1000
Little Rock, Arkansas  72205
(501) 978-8118

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................1

    A.    The Proposed Class is Ascertainable ......................................................1

        1.    Class Members' Purchases of WeightSmart Can Be Proven Without the Need for Mini-Trials ................................................2

        2.    All Consumers Who Purchased WeightSmart Were Injured .........................4

        3.    Plaintiff's Testimony Confirms that the Class is Ascertainable ....................6

        4.    The NJCFA Applies Nationwide ........................................................9

    B.    Plaintiff Satisfies the Requirements of Rule 23(a) ...................................13

        1.    Plaintiff Carrera is Typical of the Proposed Class .........................................13

        2.    Commonality Is Easily Established ..................................................................14

    C.    Plaintiff Satisfies the Requirements of Rule 23(b)(3) .................................17

        1.    Common Issues Predominate ........................................................................17

            a.    The Fact of Injury Can Be Established With Common Proof ................17

            b.    Causation Can Be Demonstrated With Common Proof ........................18

            c.    Individual Damage Issues Will Not Predominate...................................22

        2.    A Class Action Is the Only Method to Adjudicate This Controversy...........23

            a.    The Class's Claims Can Be Proven With Common Evidence ...............23

            b.    No Alternative Mechanism Can Address the Class's Claims ................24

III.    CONCLUSION ..................................................................................................26

## TABLE OF AUTHORITIES

**CASES**

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. 2009) ............................................................................13

*Agostino v. Quest Diagnostics*,
    No. 04-4362 (SRC), 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 221, 2010) ........................2, 13

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................25

*Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*,
    No. 99cv741 (JLL), 2006 U.S. Dist. LEXIS 64264 (D.N.J. 2006) ..............................24

*Berg Chilling Systems, inc. v. Hull Corp.*,
    435 F.3d 455 (3d Cir. 2006) ............................................................................10

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977) ............................................................................23

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
    212 F.R.D. 602 (S.D. Fla. 2003) ............................................................................2

*Carnegie v. Household Int'l Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................25

*Cooper v. Samsung Elecs. Am. Inc.*,
    No. 07-3853 (JLL), 2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 29, 2008) ....................12

*Cooper v. Samsung*,
    374 Fed. Appx. 250 (3d Cir. 2010) ............................................................................12

*Crete v. Resort Condominiums Int'l, LLC*,
    No. 09-5665, 2011 U.S. Dist. LEXIS 14719 (D.N.J. Feb. 14, 2011)............................13

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    No. 02-2197, 2007 U.S. Dist. LEXIS 7262 (D.N.J. 2007)............................................24

*David B. Lilly Co., Inc. v. Fisher*,
    18 F.3d 1112 (3d Cir. 1994) ............................................................................10

*Demmick v. Cellco P'ship*,
    No. 06-2163 (JLL), 2010 U.S. Dist. LEXIS 940 (D.N.J. Sept. 8, 2010) ....................12, 19

*Dumas v. Albers Med., Inc.*,
   No. 03-0640-CV-GAF, 2005 U.S. Dist. LEXIS 33482 (W.D. Mo. Sept. 7, 2005) ........................5

*Elias v. Ungar's Food Products Inc.*,
   252 F.R.D. 233 (D.N.J. 2008) .............................................................................................17, 22

*Fitzpatrick v. General Mills Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2009) ...................................................................................................2

*Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) .........................................11

*Fotta v. Trs. of United Mine  Workers of Am.*,
   319 F.3d 612 (3d Cir. 2003) ........................................................................................................15

*Franulovic v. The Coca-Cola Company*,
   390 Fed. Appx. 125 (3d Cir. 2010) ...............................................................................................4

*Georgine v. Amchem Products, Inc.*,
   83 F.3d 610 (3d Cir. 1996) ...................................................................................................14, 15

*Gross v. Johnson & Johnson*,
   303 N.J. Super 336 (Law Div. 1997) ...........................................................................................21

*In re LifeUSA Holding, Inc.*,
   242 F.3d 136 (3d Cir. 2001) ........................................................................................................15

*In re Mercedes-Benz Tele Aid Contract Lit.*,
   257 F.R.D. 46 (D.N.J. 2009) ..............................................................................................passim

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   267 F.R.D. 113 (D.N.J. 2010) ...............................................................................................10, 11

*In re PPA Prods. Liab. Litig.*,
   214 F.R.D. 614 (W.D. Wash. 2003)...............................................................................................5

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
   192 N.J. 372 (N.J. 2007) .................................................................................................17, 18, 19

*Klay v. Humana*,
   382 F.3d 1241 (11th Cir. 2004)....................................................................................................20

*Laney v. Am. Standard Companies, Inc.*,
   No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) .............................11

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008).........................................................................................................22

*McNair v. Synapse Group, Inc.*,
No. 06-5072, 2009 U.S. Dist. LEXIS 54908 (D.N.J. June 29, 2009) ...............................19, 21, 25

*Miller v. American Family Publishers*, 284 N.J. Super. 67, 663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995)...........................................................................................................................................18

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006)...........................................................................................................22

*P.V. v. Camp Jaycee*, 197 N.J. 132 (2008) ........................................................................................10

*Perez v. Metabolife International, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003).......................................................................................................6

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......................................................................................................................24

*Strzakowlski v. General Motors Corp.*,
No. 04-4740, 2005 U.S. Dist. LEXIS 18111 (D.N.J. August 16, 2005) ........................................17

*Teamsters v. United States*,
431 U.S. 324 (1977) .......................................................................................................................16

*Thiedemann v. Mercedes-Benz U.S.A., LLC*,
183 N.J. 234 (N.J. 2005) ................................................................................................................17

*Thompson v. American Tobacco Company*,
189 F.R.D. 544 (D. Minn. 1999) ......................................................................................................6

*Thompson v. Bayer Corp.*,
No. 4:07cv00017 (JMM), 2009 U.S. Dist. LEXIS 72011 (E.D. Ark. Aug. 6, 2009).......................6

*Varacallo v. Mass. Mut. Life Ins. Co.*,
332 N.J. Super. 31 (N.J. Super. Ct. App. Div. 2000) ....................................................................18

*Wal-Mart Stores, Inc. v. Dukes, et al.*,
No. 10-277, 2011 U.S. Dist. LEXIS 4567 (June 20, 2011).....................................................15, 16

*Weiner v. Snapple Bev. Corp.*,
No. 07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 3, 2010) .................6, 22

**OTHER AUTHORITIES**

*2 Newberg* § 4:40 ........................................................................................................................25

*3 Newberg on Class Actions*,
 § 10:12 (4th ed. 2002) ..........................................................................................................2

Plaintiff Gabriel Joseph Carrera ("Plaintiff") respectfully submits this reply memorandum of law in support of his motion to certify a class (the "Class") of all consumers who purchased One-A-Day WeightSmart ("WeightSmart") in the United States to assert claims against defendants Bayer Corporation and Bayer HealthCare LLC (collectively, "Bayer") for violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJCFA").

## I.      INTRODUCTION

In his initial briefing in support of his motion for class certification, Plaintiff demonstrated that this case satisfies Rule 23's requirements for class certification.  This is confirmed by the common evidence before the Court establishing that Bayer uniformly promoted WeightSmart as providing metabolism-enhancing benefits to each and every member of the Class, that WeightSmart did not work as advertised for any member of the Class and Bayer's admissions that Class members paid a premium price for metabolism-enhancing benefits that WeightSmart did not provide, resulting in Class-wide economic losses that are easily calculated.  In light of this evidence, common issues of law and fact clearly predominate, which will make a trial of the Class's claims manageable and Class-wide adjudication the best method -- indeed, the only method -- for fairly and efficiently adjudicating Plaintiffs' claims.   Moreover, the proposed Class is readily ascertainable and Plaintiff, as a purchaser of WeightSmart, is typical of the Class.  Because each and every requirement of Rule 23 is met, class certification is warranted.

## II.     ARGUMENT

### A.      The Proposed Class is Ascertainable.

Bayer asserts a number of challenges to the ascertainability of the Class.  Opp. at 10-26. [1] Each of these challenges fails.  Whether a class is ascertainable depends on the clarity of the class definition and whether class membership can be determined through objective criteria.  *Agostino v.*

---

[1] All references herein to "Opposition" or "Opp." refer to Defendants Bayer Corporation's and Bayer HealthCare LLC's Class Certification Opposition Brief, Dkt. # 79.

*Quest Diagnostics*, No. 04-4362 (SRC), 2010 U.S. Dist. LEXIS 135310, *48-*49 (D.N.J. Dec. 221, 2010) (Under Rule 23, a class must "be defined in such a way as to allow a court to ascertain its membership in some objective manner").   The Class sought to be certified is discrete and membership is based on objective criteria.  The Class includes only those persons who purchased who purchased One-A-Day WeightSmart ("WeightSmart") in the United States.  As such, the Class is properly defined and its members are readily ascertainable.

### 1.   Class Members' Purchases of WeightSmart Can Be Proven Without the Need for Mini-Trials.

Bayer argues that ascertaining the Class will not be administratively feasible because Class members' purchases will need to be proven through individual mini-trials given that not all Class members will have receipts.  Opp. at 11-18.  However, class membership in consumer actions does not hinge on consumer retention of receipts.   Other forms of evidence routinely accepted to establish class membership include affidavits or attestations.  *See e.g.*, *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003) ("The mere fact that class members will have to file a claim form or affidavit stating whether and when they were provided with pertinent disclosures does not preclude the application of class treatment"); Alba Conte & Herbert B. Newberg, 3 *Newberg on Class Actions*, § 10:12 (4th ed. 2002) ("A simple statement or affidavit may be sufficient where claims are small …").  While the process of identifying those consumers that purchased WeightSmart will require some effort, "these issues are not insurmountable." *Fitzpatrick v. General Mills Inc.*, 263 F.R.D. 687, 702 (S.D. Fla. 2009), *vacated on other grounds by* 635 F.3d 1279 (11th Cir. 2011) (granting certification of class of people that purchased a certain brand of yogurt even though determining who is in the class would "not be an easy process").

Significantly, retailers of WeightSmart offer loyalty card programs and online purchasing, which record consumers' purchases.  *See* Opening Brief at 28 n.10.[2]  As such, for many Class members, marshalling proof of purchase will be straightforward.  Indeed, in a settlement with the Federal Trade Commission (the "FTC") of a case involving misleading claims about the purported cold prevention remedy "AirShield", WeightSmart retailer CVS Pharmacy, Inc. ("CVS") identified AirShield purchasers through its CVS ExtraCare program and records of sales on cvs.com. Sheehan Reply Decl., Ex. 1 (Stipulated Final Judgment and Order, at 8-9), Ex. 2 (FTC press release, at 1) and 3 (CVS press release indicating that ExtraCare program has over 66 million members).[3] Thus, many Class members' purchases can be proven through discovery of loyalty card program and online purchasing records.  Bayer's assertion that "retailers do not retain records of who purchased an over-the-counter multivitamin [and that] [a]s such, the only record that an individual purchased WeightSmart would come from a store receipt or some other proof or purchase, such as the box or bottle" (Opp. at 11) is simply false.

Moreover, as set forth in the Declaration of James R. Prutsman In Support of Plaintiff's Motion for Class Certification ("Prutsman Declaration" or "Prutsman Decl."), filed concurrently herewith, claims administrators routinely distribute monetary relief in class actions in which claimants do not have receipts or other documentary proof of purchase.  Prutsman Decl. at ¶ 6. Therefore, it will be administratively feasible to identify the members of the Class.

---

[2] All references herein to "Opening Brief" are to the Memorandum of Law in Support of Plaintiff's Motion for Class Certification, Dkt. # 72-1.

[3] All references herein to "Sheehan Reply Decl." are to the Reply Declaration of Patrick J. Sheehan in Support of Plaintiff's Motion for Class Certification, filed concurrently herewith.

## 2.    All Consumers Who Purchased WeightSmart Were Injured.

Bayer also argues that the Class is not ascertainable because it includes individuals who were not injured because they lost weight while taking WeightSmart.  Opp. at 24-26.  However, Plaintiff does not allege that he and other Class members were injured by virtue of not losing weight.  Instead, he alleges that he and other members of the Class were injured because they paid a premium price for WeightSmart, a product marketed as having metabolism-enhancing benefits, but received a product without those benefits.  Proving these claims does not depend on proving that Plaintiff or other members of the Class failed to lose weight while taking WeightSmart but rather depends on whether or not WeightSmart in fact had metabolism-enhancing properties, which it clearly did not.  Moreover, even if Plaintiff and other Class members did lose weight while taking WeightSmart, that doesn't mean, as Bayer repeatedly suggests, that WeightSmart caused weight loss or enhanced metabolism.  Indeed, the record clearly shows that WeightSmart neither enhanced metabolism nor caused weight loss.   As Plaintiff's expert, Bill Gurley, Ph.D., testified, WeightSmart "would not work as advertised for any consumer, regardless of their overall health, weight, sex or ethnicity."  *See* Declaration of Patrick J. Sheehan, Dkt. # 72-3 ("Sheehan Decl."), Ex. 13 (Expert Report of Bill Gurley, Ph.D.).

Bayer's comparison of this case to *Franulovic v. The Coca-Cola Company*, 390 Fed. Appx. 125 (3d Cir. 2010) (Opp. at 25-26) is misplaced.  In *Franulovic*, the plaintiff challenged the veracity of Coca-Cola's advertisements claiming that drinking three cans of its Enviga beverage per day would lead to weight loss and alleged that she suffered an ascertainable loss on the basis that she did not lose weight while drinking Enviga.  *Franulovic*, 390 Fed. App'x. at 126.  As Bayer itself notes, The Third Circuit found that the plaintiff had not demonstrated an ascertainable loss because she did not monitor her weight or diet while she was using Enviga and because the only supporting evidence she submitted to show that Enviga was ineffective was her testimony that her pants felt

tighter.  *Id.* at 127.  In this case, by contrast, Plaintiff claims that he and other members of the Class suffered ascertainable economic losses because they bought WeightSmart, a multivitamin marketed by Bayer as having metabolism-enhancing benefits, but received a product that did not provide these benefits.  These claims do not depend on the weight loss experienced by Plaintiff or other members of the Class.  In support of his claims, Plaintiff submits detailed evidence of WeightSmart's inability to enhance metabolism, including expert testimony.  As such, Plaintiff's claims here are nothing like those in *Franulovic*.[4]

The other authorities upon which Bayer relies in support of its argument that the Class is not ascertainable are likewise distinguishable.  In most of these decisions, the class definitions were found to be dependent upon proof of the merits of a particular class member's claim, far more than mere confirmation of whether he or she had purchased the product at issue, as is the case in the present action; none of these decisions considered the availability of electronic purchase records. *Agostino*, 2010 U.S. Dist. LEXIS 135310 at *50 ("[a] transaction by transaction inquiry would still need to be performed… to determine whether a customer had been defrauded, that is, whether Quest acted with scienter as to him or her"); *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-GAF, 2005 U.S. Dist. LEXIS 33482, *17 (W.D. Mo. Sept. 7, 2005) ("individuals are required to show some proof of injury in order to qualify as a member of the class.  Specifically, an individual must demonstrate that he or she purchased or paid part of the cost for counterfeit Lipitor that was distributed or sold by Albers. This could require testing the pills"); *Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 44 (2d Cir. 2006) (finding class was not ascertainable because multiple individual inquiries were required to determine whether or not class members were injured by paying undisclosed compensation, including inquiries into "the subjective intent of the purchaser"); *In re PPA Prods. Liab. Litig.*, 214 F.R.D. 614, 617-18 (W.D. Wash. 2003) (in case brought to

---

[4] Moreover, the decision in *Franulovic* was issued on a motion for summary judgment.  *Id.*  As such, it has no application to Plaintiff's motion for class certification.

recover monies paid for medication that was unused at the time it was withdrawn from the market, finding that the class was not ascertainable because, in order to determine class membership, "[p]eople will have to recall when they bought a product, when they used it, and how much if any was left over on November 6, 2000"); *Perez v. Metabolife International, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (in mass tort case arising out of failure to disclose health risks associated with dietary supplement and seeking relief in the form of a medical monitoring program, where class membership depended on the user's daily dosage and period of ingestion of the product, holding that proving class membership was unworkable because "it is unlikely that many of these putative class members will be able to produce objectively verifiably proof that they ingested the relevant amounts of Metabolife 356 for the relevant period of time"); *Thompson v. American Tobacco Company*, 189 F.R.D. 544, 554 (D. Minn. 1999) (in mass tort case for medical monitoring arising out of the concealment of health risks of smoking, noting that "Plaintiffs assume that the affidavits would constitute conclusive proof of injury. In reality, even if a questionnaire could be used to establish a prima facie evidence of injury, Defendants would be permitted to cross-examine each class members regarding that alleged injury"); *Thompson v. Bayer Corp.*, No. 4:07cv00017, *7-*8 (JMM), 2009 U.S. Dist. LEXIS 72011 (E.D. Ark. Aug. 6, 2009) (questioning - not deciding - whether the proposed class could be ascertained but failing to address the availability of electronic records of class members' purchases); *Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647, *39-*43 (S.D.N.Y. Aug. 3, 2010) (failing to consider availability of electronic purchase records).

### 3.    Plaintiff's Testimony Confirms that the Class is Ascertainable.

Pointing to Plaintiff's testimony as the only support for its argument, Bayer contends that consumers will not remember whether they purchased WeightSmart, when they purchased WeightSmart, or whether they purchased WeightSmart or WeightSmart Advanced.   However,

repeatedly taking snippets out of context, Bayer distorts Plaintiff's deposition testimony with respect to every one of these points.  In reality, Plaintiff's testimony clearly confirms that he bought WeightSmart, when he bought it, and his recollection of the change from WeightSmart to WeightSmart Advanced.  Plaintiff's testimony therefore not only confirms his membership in the Class but also that demonstrates that ascertaining the identity of the Class is feasible.

Bayer's assertion that Plaintiff's testimony regarding the timing of his purchase contradicts his complaint (Opp. at 14-16) is based on a flagrant distortion of his deposition testimony.  Plaintiff's complaint alleges that he last purchased WeightSmart in approximately September 2007.  Third Amended Complaint, Dkt. #53, ¶ 18.  At his deposition, Plaintiff Carrera testified that he stopped purchasing WeightSmart in the spring or summer of 2008, a year and a half after Bayer stopped distributing WeightSmart.  Both statements are true.  What Bayer fails to account for is that at deposition, Plaintiff was not asked to distinguish between his last purchase of WeightSmart and his last purchase of WeightSmart Advanced, which was in 2008.  Indeed, Bayer's first mention of WeightSmart Advanced at Plaintiff's deposition came well after it questioned him regarding the timing of his last purchase of WeightSmart.  *See* Sheehan Reply Decl., Ex. 4 (Carrera Depo.), at 94:8-95:23 (regarding his last purchase); 120:16-121:4 (first discussion of WeightSmart Advanced).  Moreover, when asked about WeightSmart Advanced, Plaintiff clearly recalled the change in the WeightSmart packaging and when it occurred:

> Q.  … Is it possible that you took a subsequent One-A-Day product that was devoted to energy?
> A.  To clarify that, that statement, and then to answer your question is that there were packaging changes of the One-A-Day.  The first one that I took was not the last one that I took in the sense of the packaging.  The wording may have been changed.  When he pointed it out to me, it jogged some of my memory, and now I'm coming forth and stating that *there was a One-A-Day that I took probably toward the end before I stopped altogether that did have the word energy*….
> Q.  Is that One-A-Day that you took probably toward the end before you stopped altogether that did have the word energy in it part of this lawsuit?
> A.  Well, *that would have been toward the end of 2007 going into the beginning of 2008*, and I cannot – I cannot answer that with a certainty.

7

Sheehan Reply Decl., Ex. 4 (Carrera Depo.), at 212:7-17; 213:9-14 (emphasis added).  As such, Bayer's contention that consumers will not remember whether or not they purchased WeightSmart versus WeightSmart Advanced is unsupported by the record.

Perhaps Bayer's worst mischaracterization of Plaintiff's testimony is its claim that Plaintiff testified that the first WeightSmart product he bought contained guarana, which was only in WeightSmart Advanced, relying on just five words of testimony taken out of context.  Opp. at 18. In fact, Plaintiff testified that the first bottle of WeightSmart had some type of leaf, but that he wasn't sure about the name:

> Q.  Could you list any of the ingredients that were listed cocktail-style on the first bottle that you purchased of WeightSmart?
> A.  There's the – some type of leaf.  I forget it it's geranial (phoenetic) or – I don't want to invent names.  You know, right now my memory doesn't serve me right.
> Q.  But you think it was gerania that was listed on the first bottle of WeightSmart that you purchased?
> A.  I'm not 100 percent sure; something like that.

Sheehan Reply Decl., Ex. 4 (Carrera Depo.), at 105:25-106:9.  Indeed, the first package of WeightSmart Plaintiff purchased claimed to enhance one's metabolism with EGCG, a green tea leaf extract, which was featured prominently on the front of the WeightSmart packaging superimposed over an image of a green tea leaf.  *See* Opp. at 17.

Plaintiff's estimates of the number of pills in each bottle of WeightSmart that he purchased as "something like" 30 or 60 and "something like" 90 or 120 were also accurate and clearly indicate purchases of Bayer's two biggest-selling sizes of WeightSmart, the 50-count and 100-count bottles. *See* Sheehan Reply Decl., Ex. 4 (Carrera Depo.), at 101:25-102:7; 112:5-8; 117:24-118:1; Sheehan Decl., Ex. 22.[5]

_____

[5] Bayer makes much of the fact that Plaintiff testified that he bought WeightSmart in blue packaging and then later in orange packaging, which Bayer claims never existed.  Opp. at 15.  In fact, when Bayer changed WeightSmart's ECGC claim from 27 milligrams to 32 milligrams, it

### 4.      The NJCFA Applies Nationwide.

Bayer argues that under either Section 148(1) or (2) of the Restatement (Second) Conflict of Laws, the laws of Class members' home states' laws apply.  Opp. at 18-24.  As an initial matter, contrary to Bayer's position, Section 148(1) has no application in this case.  As Bayer acknowledges (Opp. at 19), that section applies only where the misrepresentation is made and received in the same state.  That is not the case here, where the alleged misrepresentations originated in Bayer's New Jersey headquarters and were disseminated throughout the country. Bayer offers no explanation to the contrary.  As such, Section 148(2) applies.

Section 148(2) of the Restatement provides:

(2)      When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a)      the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b)      the place where the plaintiff received the representations,

(c)      the place where the defendant made the representations,

(d)      the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e)      the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f)      the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant

In performing its choice of law analysis, after weighing these factors, the Court must then weigh the factors under Restatement (Second) Conflict of Laws § 6, which, in summary, are 1) the interests of interstate comity; 2)  the interests of the parties; 3) the interests underlying the field of tort law; 4)

---

added a yellow banner with red lettering to the top of the package, which could be accurately described as giving the package (or at least part of it) an orange appearance.  *See* Opp. at 17.

the interests of judicial administration; and 5) the competing interests of the states. *P.V. v. Camp Jaycee*, 197 N.J. 132, 140, 147 (2008). As set forth in detail in Plaintiff's Brief Regarding Choice of Law in Support of Plaintiff's Motion for Class Certification (Dkt. #72-2), the weight of these factors clearly favors the application of New Jersey law in this case.

Bayer's suggestion that the Court in *In re Mercedes-Benz Tele Aid Contract Lit.,* 257 F.R.D. 46 (D.N.J. 2009) ("*Mercedes I*") "failed to give sufficient weight to the purchaser's state's superior interests in applying its own consumer protection laws" (Opp. at 23) is meritless. The analysis under Restatement § 148(2) and § 6 does not involve simply counting up the number of factors favoring the application of one law or another, where the state with the most factors wins. *Mercedes I*, 257 F.R.D. at 67 (citing *Berg Chilling Systems, inc. v. Hull Corp*., 435 F.3d 455, 467 (3d Cir. 2006)); *David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1119 (3d Cir. 1994). "To the contrary, the relative importance of each of the considerations articulated by Restatement § 148(2) varies depending upon the circumstances underlying the claim asserted." *Id.* As here, four of the Section 148(2) factors weighed in favor of the Class members' home states' laws and two weighed in favor of New Jersey law but that is not, by itself, decisive.

In *Mercedes I*, the Court did not discount the plaintiffs' home states' interests, but found that New Jersey's interests outweighed them. *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 148-49 (D.N.J. 2010) ("*Mercedes II*") Of particular importance was New Jersey's interest in punishing the tortfeasor who acts within its borders and deterring others from following his example. *Id.* at 149 (quoting Restatement (Second) of Conflict of Laws § 146, Comment e). With that interest in mind, the Court found that New Jersey had a greater interest in applying its own law than the law of the plaintiffs' home states:

> [W]hile each of the named Plaintiffs' home states has an equal interest in applying the compensatory portion of their consumer fraud statutes, New Jersey has a greater interest than the other five in having the punitive provisions of the NJCFA control the litigation due to the fact that Mercedes is headquartered there and the

10

misrepresentations or omissions at issue were made in that state-the Court found that New Jersey is 'the state of dominant interest and ... its local law should control' pursuant to the Restatement test.

*Id.*

While applying the Restatement § 6 factors, the Court noted that the interests of the plaintiffs' home states and New Jersey did not conflict, but were aligned, since they all have an interest in seeing that their citizens are compensated when they are the victims of wrongdoing.  *Id.* at 149-50.  Far from failing to give sufficient weight to the interests of the plaintiffs' home states, the Court found that their interests would not be frustrated, but, in fact, would be advanced by the application of New Jersey law.

> Although the consumer fraud statutes of the various states from which class members will be drawn vary in many respects, every jurisdiction seeks to assure that plaintiffs can recover compensatory damages for any pecuniary loss suffered as the result of foreseeable reliance on a defendant's misrepresentations. That shared policy would be frustrated if the Court applied the law of each Plaintiffs' home state to his or her claims and refused on that basis to certify a class....

*Mercedes I*, 257 F.R.D. at 69.  *See also Mercedes II*, 267 F.R.D. at 151.[6]  In sum, this Court should apply the NJCFA to the claims of the entire Class because New Jersey has a greater interest in applying the NJCFA to this case than other states do in applying their own consumer protection laws.  Refusal to apply the NJCFA would only frustrate the shared interests of all the states in protecting consumers.

The authorities upon which Bayer relies to suggest that Section 148(2) requires application of the Class members' home states' laws are inapplicable.  For example, in *Laney v. Am. Standard Companies, Inc.*, No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010), the court did not even apply Section 148(2) but applied Section 148(1) instead.  *Id.* at *69.  Moreover,

---

[6] A class of Florida WeightSmart purchasers asserting claims under the Florida Deceptive and Unfair Trade Practices Act would also be ascertainable.  *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (affirming certification of class of purchasers of yogurt allegedly lacking claimed digestive health benefits).

critical to the court's decision to apply the consumers' home states' laws to the consumer fraud claims at issue there was its finding that that warranties provided to consumers by the defendant put the consumers on notice that the defendant expected the laws of the consumers' home states to apply. *Id.* at *70. There are no such warranties at issue here.

In *Cooper v. Samsung Elecs. Am. Inc.*, No. 07-3853 (JLL), 2008 U.S. Dist. LEXIS 75810, *6-*7 (D.N.J. Sept. 29, 2008), although the court applied the plaintiff's home state's law, it did not perform a choice of law analysis under Section § 148(2) or § 6. In fact, it did not specify what choice of law analysis it was performing at all. Although the Third Circuit affirmed the decision under Section § 148(2) in *Cooper v. Samsung*, 374 Fed. Appx. 250, 255 (3d Cir. 2010), it did so on a finding that the only connection to New Jersey was the location of Samsung's headquarters. As set forth in Plaintiff's Choice of Law Brief, the unlawful course of conduct that Bayer carried out from its headquarters in New Jersey went far beyond it simply having an address there. *See* Choice of Law Brief at 1-3.[7]

*Demmick v. Cellco P'ship*, No. 06-2163 (JLL), 2010 U.S. Dist. LEXIS 940-41 (D.N.J. Sept. 8, 2010) is also inapposite. In that case, the court held that a choice of law provision contained in relevant wireless phone service contracts required application of the plaintiffs' home states' laws. *Id.* at *10. Although the court also held, in dicta, that the Restatement would also require the application of the plaintiffs' home state laws, that holding was based on, among other things, the fact that the plaintiffs' contracted for the wireless phone service at issue in their home states. *Id.* As the NJCFA claim alleged in *Demmick w*as "based on oral representations [made at the time of

---

[7] Bayer's repeated assertions that it is not a New Jersey "resident" (Opp. at 21, 23 n.8) cannot change the fact that it is headquartered there, which it does not dispute.

contracting] that may have varied" (*id.* at *49), this holding is not surprising.  However, there is no evidence of such localized variations in this case.[8]

The decisions in *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009) ("*Agostino I*") and *Agostino v. Quest Diagnostics Inc.*, No. 04-04362, 2010 U.S. Dist. LEXIS 135310 (D.N.J. Dec. 22, 2010) ("*Agostino II*") are likewise inapplicable.  In the *Agostino* litigation, which was "rooted in the provision of laboratory services in each class member's home community" (*Agostino II*, 2010 U.S. Dist. LEXIS 135310, at *29), the choice of law analysis turned on the court's conclusion that "the state where the consumer was able to obtain such services would have the most substantial relationship to the controversy and a superior interest regarding the application of its law to its resident's consumer fraud claim."  *Id.* at *31.  As the present action involves neither the provision of services or conduct of a defendant selling those services locally throughout the country, the *Agostino* litigation is completely irrelevant here.

### B. Plaintiff Satisfies the Requirements of Rule 23(a).

### 1. Plaintiff Carrera is Typical of the Proposed Class.

Bayer baldly asserts that Plaintiff is not typical of the proposed class because he "did not suffer any injury; he did not pay a premium for WeightSmart, WeightSmart worked as he expected, and WeightSmart cost less than the alternatives he considered."  Opp. at 27.  However, the record demonstrates to the contrary.  As set forth in Plaintiff's moving papers, typical of all Class members, Plaintiff paid a premium price for WeightSmart's claimed metabolism-enhancing benefits yet WeightSmart did not provide those benefits; thus, Plaintiff was injured by paying for metabolism-enhancing benefits that he did not receive.

---

[8] *Crete v. Resort Condominiums Int'l, LLC*, No. 09-5665, 2011 U.S. Dist. LEXIS 14719 (D.N.J. Feb. 14, 2011), correctly applied Section 148(1) because the misrepresentations regarding the subject timeshares were made by the defendants' sales people to the plaintiffs in-person in the Dominican Republic.  *Id.* at *1-*2.  Nevertheless, it has no bearing on the present case.

Bayer also claims that Plaintiff is not typical because he is subject to the unique defense that he cannot show that he took WeightSmart.  However, at his deposition Plaintiff confirmed that be bought WeightSmart on each of the five occasions that he alleged in the Third Amended Complaint. *See* Sheehan Reply Decl, Ex. 4 (Carrera Depo.), at 207:5-16 (confirming the accuracy of paragraph 18 of the Third Amended Complaint); Third Amended Complaint, Dkt. # 53, at ¶ 18.  Moreover, as Plaintiff did purchase WeightSmart for its metabolism-enhancing benefits *(id.)*, Bayer's argument that he cannot establish causation because he purchased WeightSmart for other reasons (Opp. at 26-27) also misses the mark. In any event, as Bayer asserts these defenses against the entire Class, there is nothing "unique" about them.  As such, they support, rather than defeat, typicality.

### 2. Commonality Is Easily Established.

Bayer asserts that commonality does not exist because "[i]n order to prevail on their claims, plaintiffs in this case would have to prove liability and damages on a case-by-case basis."  Opp. at 28.  However, as set forth in Plaintiff's moving papers, Plaintiff can prove that Bayer uniformly represented to every Class member that WeightSmart enhanced metabolism, that WeightSmart did not enhance any Class member's metabolism, and that WeightSmart's inability to enhance metabolism caused economic loss to all Class members.  *See* Opening Brief, at 2-18.

The authorities upon which Bayer relies for its argument that Plaintiff has failed establish commonality are easily distinguished.  *Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996), was a mass tort action brought for personal injuries arising out of asbestos exposure.  There were no consumer protection claims at issue in *Georgine*.  *Id.* at 620.  As such, the Third Circuit's reversal of class certification in that case on the grounds that individual issues of causation and differences in state laws predominated over common issues (*id.* at 627-630) has no bearing whatsoever on this case.  In any event, the Third Circuit did not hold that the commonality

requirement was not met in *Georgine*. *Id.* at 627 ("we do not hold that this class fails the commonality requirement"). As such, *Georgine* avails Bayer nothing.

In *Fotta v. Trs. of United Mine Workers of Am.*, 319 F.3d 612 (3d Cir. 2003), the Third Circuit affirmed a lower court order denying class certification of claims brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for interest on wrongfully withheld disability payments. In that case, to decide whether each putative class member would have been entitled to interest, the District Court would have had to determine whether the defendant wrongfully withheld or wrongfully delayed payment for each class member. *Id.* at 619. This is not the case here, where every Class member who purchased WeightSmart was injured by virtue of paying a premium price for a product promising to enhance one's metabolism but receiving a product that did not provide these benefits. Moreover, in *Fotta*, determining the remedies at issue required individual inquiries because "interest on delayed ERISA benefits is an equitable remedy dependent upon the individual facts of each claim." *Id.* at 137. As this case turns neither on the circumstances of a particular transaction nor the idiosyncratic remedy provisions of ERISA, *Fotta* is completely inapposite.[9]

Bayer fares no better by relying on the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes, et al.*, No. 10-277, 2011 U.S. Dist. LEXIS 4567 (June 20, 2011) (*see* letter from Christopher D. Landgraff to the Honorable Jose L. Linares dated June 24, 2011 (the "June 24 Letter")). Although the Supreme Court announced in *Dukes* that "[c]ommonality requires the plaintiff to demonstrate that class members 'have suffered the same injury'" and that "[t]his does not mean merely that they have all suffered a violation of the same provision of law," all that is

---

[9] *In re LifeUSA Holding, Inc.*, 242 F.3d 136 (3d Cir. 2001) is also irrelevant to the commonality determination in this case. As an initial matter, as in *Georgine*, the Third Circuit did not rule on commonality in *In re LifeUSA Holding*. *Id.* at 144. Moreover, in that case, the plaintiffs brought claims arising out of sales of annuities that were made by over 30,000 independent agents, which "were neither uniform nor scripted." *Id.* at 146. Here, by contrast, Bayer does not even contest that its representations regarding WeightSmart were uniform. Opp. at 2, 35.

required to show commonality is that class members' claims "depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 4567, at *20. In this case, the truth or falsity of Bayer's contention that WeightSmart enhanced metabolism can be, and has been, shown on a class-wide basis through common proof. *See* Opening Brief at 8-15.[10]

Bayer's contention that *Dukes* confirms that Plaintiff's damage models are not workable because they seek to impose damages that are not reflective of Bayer's actual liability (June 24 Letter at 2), is misplaced. As an initial matter, in *Dukes*, the Supreme Court's analysis was limited to whether damages could be established on a class-wide basis in the employment discrimination context, in which it has long been established that "'a district court must usually conduct additional proceedings … to determine the scope of individual relief." *Dukes*, at *49 (quoting *Teamsters v. United States*, 431 U.S. 324, 361 (1977)). Moreover, the "Trial by Formula" plan approved by the Court of Appeals but rejected by the Supreme Court in *Dukes* would not have established liability for all the members of the proposed class but rather would have estimated Wal-Mart's total liability by adjudicating liability sample set of individual claims before a special master and extrapolating the results to the class as a whole. *Dukes* at *50. By contrast, this is a consumer protection case, the facts of which are far simpler than those implicated in an employment discrimination case, where the personal interactions between individual representatives of an employee are of central importance. In addition, Plaintiff proposes proving liability for all Class members, each of whom has been injured by paying for the metabolism-enhancing benefits promised by WeightSmart but not receiving them. The total amount of damages asserted by Plaintiff therefore corresponds

---

[10] Bayer's claims that "WeightSmart worked as advertised" and that "at a minimum, individual inquiry would be required to determine WeightSmart's efficacy and to determine whether and to what amount of damages were suffered" (June 24 Letter, at 2) are not supported by the record.

exactly to Bayer's liability. The only proof required from individual Class members will be confirmation of their purchases, information routinely processed by class action claims administrators. Prutsman Decl., at ¶¶ 6-9.

### C.     Plaintiff Satisfies the Requirements of Rule 23(b)(3).

#### 1.     Common Issues Predominate.

Bayer argues that proving injury, causation and damages requires individual factual inquiries that destroy predominance. Opp. at 29-42. However, in order to prove the Class's NJCFA claim, Plaintiff need only show (1) unlawful conduct on the part of Bayer, (2) an ascertainable loss on the part of Class members and (3) a causal relationship between Bayer's unlawful conduct and the ascertainable loss. *Mercedes I*, 257 F.R.D. at 73 (D.N. J. 2009) ("*Mercedes*"); *Elias v. Ungar's Food Products Inc.*, 252 F.R.D. 233, 248 (D.N.J. 2008); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (N.J. 2007) ("Int'l Union"). As each of these elements can be proven with common evidence,   common issues predominate and each of Bayer's arguments fails.

#### a.     The Fact of Injury Can Be Established With Common Proof.

To prove ascertainable loss, Plaintiff need only show that he and other Class members "paid for a product and got something less than had been promised." *Elias*, 252 F.R.D. at 249 (internal quotations omitted); *Mercedes I*, 257  F.R.D. at 73 (same). *See also Thiedemann v. Mercedes-Benz U.S.A., LLC*, 183 N.J. 234, 248 (N.J. 2005) (defining "ascertainable loss" as "either an out-of-pocket loss or a demonstration of loss in value" that is "quantifiable or measurable"); *Strzakowlski v. General Motors Corp.*, No. 04-4740, 2005 U.S. Dist. LEXIS 18111, * 22-*23 (D.N.J. August 16, 2005) ("For their money, they received something less than and different from what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable

loss") (quoting *Miller v. American Family Publishers*, 284 N.J. Super. 67, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995).

As set forth in Plaintiff's Opening Brief, the evidence shows that Bayer represented to each and every member of the Class that WeightSmart enhanced one's metabolism and that, in view of those representations, Class members could reasonably expect that WeightSmart would in fact enhance one-s metabolism.   Opening Brief at 2-8.   The evidence further shows that Bayer's rationale for these claims, which was based on its "analogy" to an inapplicable federal regulations, was flawed.   *Id.* at 9-10.   Finally, the evidence shows that WeightSmart "would not work as advertised for any consumer, regardless of their overall health, weight, sex or ethnicity."   *Id.* at 11-13; Sheehan Decl., Ex. 13 (Expert Report of Bill Gurley, Ph.D.).   Bayer never tested the efficacy of WeightSmart and, faced with the present litigation, could not produce an expert to opine that it was effective.   Opening Brief at 12-13.   In short, WeightSmart just didn't work.

### b.      Causation Can Be Demonstrated With Common Proof.

With regard to causation, "the NJCFA requires only a causal nexus between the method, act, or practice declared unlawful and the consumer's ascertainable loss."   *Mercedes I*, 257 F.R.D. at 74 (quoting *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31, 48-49 (N.J. Super. Ct. App. Div. 2000)).   Plaintiff need not prove detrimental reliance on Bayer's representations.   *Int'l Union*, 192 N.J. at 389.   Instead, the NJCFA "essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss."   *Id.*   In this case, Plaintiff can prove causation based on common evidence.

In finding that common issues predominated with regard to the plaintiffs' NJCFA claim in *Elias*, the court reasoned as follows:

> As to the causal nexus, the alleged promises were all embodied on defendants' packages and are limited to the statements about the fat and caloric content of five food products. Therefore, the statements to each purchaser are finite and identical. Here, like *Varacallo*, there are allegations that uniform statements regarding fat and

calories were made to all customers that were misleading and reasonably could be said to have made a difference in a decision to purchase the product, *Hannan, 2007 N.J. Super. Unpub. LEXIS 1238, 2007 WL 1468643, at 13*, and so it would be appropriate to presume there is a connection between the statements and the purchase of a product different from that which was promised. See *Hannan, 2007 N.J. Super. Unpub. LEXIS 1238, 2007 WL 1468643, at 10*….

In short, the plaintiffs "identif[ed] a small core of misrepresentations . . . made to all, or most, of the class members" *Stephenson, 177 F.R.D. at 291*, and the representations are likely to have made a difference in the decision to purchase a product that was different from what was promised. These facts will be established via common proof and will not present individual issues. Thus, the predominance requirement for the plaintiffs' NJCFA claim is satisfied.

252 F.R.D. at 249.  This reasoning applies with equal force to Plaintiff's claims in this case.  Here, as in *Elias*, Plaintiff alleges that the promises at issue were on the packaging of a single product, WeightSmart, and were limited to Bayer's statements that WeightSmart enhanced metabolism. These alleged misleading statements were finite, identical, uniform, made to all purchasers of WeightSmart, and can reasonably be said to have made a difference in a decision to purchase the product.  As such, it would be appropriate to presume that there is a connection between Bayer's alleged misrepresentations and the purchase of WeightSmart, a product that was different from that which was promised.[11]

Similarly, in finding that the Plaintiffs could prove causation on a class-wide basis in *Mercedes I*, the Court observed as follows:

---

[11] Given Plaintiff's prominent reliance upon *Elias* in his Opening Brief, Bayer's claim that Plaintiff has conceded "that the Court cannot presume causation" (Opp. at 38) is inexplicable.  Moreover, Bayer's broad assertion that "causation cannot be presumed even where the defendant's conduct is consistent or uniform" (Opp. at 39) misstates the law.  In fact, causation may be presumed, but only in limited circumstances, such as those present in *Elias* and this case.  Bayer's authorities are in accord.  *See, e.g., McNair v. Synapse Group, Inc.*, No. 06-5072, 2009 U.S. Dist. LEXIS 54908, *25, *32 (D.N.J. June 29, 2009)(acknowledging presumption of causation recognized in *NJCFA* class action cases including *Elias*, but declining to apply presumption in the absence of "written, uniform marketing materials"); *Int'l Union*, 192 N.J. at 391-392 (rejecting application of fraud on the market theory of causation, which presumes reliance, to NJCFA claim); *Demmick*, 2010 U.S. Dist. LEXIS 94041, at *47, *49 (noting that "[a] presumption may not be automatically used to eliminate a particular element" of a claim, particularly "with regard to causation for a NJCFA claim," but noting that the case was not "one where all the Plaintiffs were faced with the same information when making their decisions").

19

Plaintiffs simply claim that they did not get what they paid for – that because of Mercedes's alleged wrongdoing, they did not know that the Tele Aid systems in their automobiles would become useless long before the vehicles aged to such a degree that they were no longer drivable. Therefore, Plaintiffs will not need to prove at trial that each individual class member relied on Mercedes statements related to Tele Aid when purchasing their vehicles.

*Mercedes I*, 257 F.R.D. at 74. In this case, just as in *Mercedes I*, Plaintiff alleges that because of Bayer's misrepresentations, he and other Class members did not know that WeightSmart did not enhance metabolism and, as a result, did not get what they paid for. Therefore, Plaintiff can prove causation on a class-wide basis with common evidence.

Even if Plaintiff were required to prove reliance on a class-wide basis, he could. As the Eleventh Circuit stated in *Klay v. Humana*, 382 F.3d 1241, 1259 (11th Cir. 2004), reliance may be proven on a class-wide basis with common evidence:

> while each plaintiff must prove his own reliance in this case, we believe that, based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class. That is, the same considerations could lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' representations.
>
> … It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees concerning physician pay--the very consideration upon which those agreements are based--go to the heart of these agreements, and that doctors based their assent upon them. This is a far cry from the type of "presumed" reliance we invalidated in *Sikes*. Consequently, while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue). For this reason, this is not a case in which individualized issues of reliance predominate over common questions.

Here, as in *Klay*, the representations at issue concerning the metabolism-enhancing benefits of WeightSmart go to the heart of the product's very nature. Absent the metabolism-enhancing benefits it claimed to provide, WeightSmart was just an ordinary multivitamin. It does not strain credulity to conclude that each Class member, in purchasing WeightSmart, sought the metabolism-

enhancing benefits it claimed to provide.  If they didn't seek these benefits, they could have purchased an ordinary multivitamin.  Moreover, every Class member paid a premium price for the metabolism-enhancing benefits of WeightSmart, yet did not receive them.

Significantly, Bayer has not produced any evidence indicating that even a single consumer who purchased WeightSmart was not seeking its purported metabolism-enhancing benefits.  Not even Bayer's purported marketing expert, Dr. Richard Semenik, could identify a consumer who did not seek these benefits from WeightSmart.  To the contrary, Dr. Semenik readily acknowledged that the metabolism-enhancing benefits promised by WeightSmart could have been a factor in all consumers' decisions to purchase it, regardless of other considerations that may have factored into their decisions.  *See* Sheehan Reply Decl., Ex. 5 (Semenik Depo.), at 80:12-81:8.  Dr. Semenik also agreed that if Plaintiff proves that WeightSmart was promoted as providing metabolism-enhancing benefits but did not in fact provide them, that would constitute a deception.  *See* Sheehan Reply Decl., Ex. 5 (Semenik Depo.), at 62:23:-63:13 (Q.  Let's assume that plaintiffs in this case allege that the marketing, advertising and promotion of WeightSmart claim that WeightSmart enhances metabolism.  Let's further assume that the plaintiff is able to prove that One-A-Day WeightSmart does not enhance metabolism.   Would that be something that would constitute deceptive advertising, in your view?  … [A.]  With that hypothetical situation, assuming that there was conclusive scientific evidence with respect to that claim… that would constitute a situation where there was deception, or a misrepresentation….").  Thus, Plaintiff can prove causation with common evidence.[12]

---

[12] The cases Bayer cites in which the proof required to show causation was found to defeat predominance (Opp. at 36) are all distinguishable and, as such, have no bearing here.  *See McNair*, 2009 U.S. Dist. LEXIS 54908, at *30 (D.N.J. June 29, 2009)(where system for cancelling magazine subscriptions presented various options to class members, including continuing the subscriptions, and determining causation depended on the subjective intent of each class member); *Gross v. Johnson & Johnson*, 303 N.J. Super 336, 346 (Law Div. 1997)(challenging three particular advertisements for Pepcid AC from a broader media blitz and concluding that common questions

### c.    Individual Damage Issues Will Not Predominate.

Under the NJCFA, Plaintiff and other Class members are entitled to "a refund of all moneys acquired" through Bayer's unlawful conduct.  N.J.S.A. 56:8-2.11.  To prove their entitlement to refunds, Plaintiff and other Class members need only show that they "paid for a product and got something less than had been promised" (*Elias*, 252 F.R.D. at 249), which, as shown above, they have done.  Accordingly, they are entitled to refunds of the monies they spent on WeightSmart, approximately $208 million.  Opening Brief at 15-16.  Even if Bayer succeeds in arguing that it should not be liable for refunds of retail sales because it was not a retailer, Bayer is still liable for the revenues it acquired selling WeightSmart, approximately $180 million or, alternatively, the net sales dollars it acquired, approximately $150 million.  *Id.* at 16.  Alternatively, Plaintiff will be able calculate class-wide damages based on the premium price that Class members paid for WeightSmart over and above ordinary One-A-Day vitamins.  Opening Brief at 16-18.[13]  This is an appropriate measure of damage under the NJCFA (*see, e.g., Elias*, 252 F.R.D. at 249) and the same measure of damage that Bayer suggests is appropriate.  *Id.* at 16-17.   Accordingly, Bayer's actual liability is not in question.

---

did not predominate because a individual showings of reliance were required); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008)(analyzing whether class-wide reliance could be proven in challenge to marketing of light cigarettes under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*); *Weiner*, 2010 U.S. Dist. LEXIS 79647, at *22-*23 (in case brought under New York G.B.L. § 349, finding that there was no relevant data or reliable method offered for determining whether consumers paid a price premium for Snapple's "All Natural" labeling claims); *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006)(in case alleging that Coca-Cola's marketing of fountain diet Coke was misleading because it implied that it contained the same sweetener as bottled diet Coke, thereby violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815, Ill. Comp. Stat. 505/1, *et seq.*, holding that the plaintiffs could not prove causation class-wide because class members were likely exposed to various representations).

[13] As noted in Plaintiff's Opening Brief (Opening Brief at 17 n.8), Plaintiff requested retail sales data from Bayer so that he could perform a refined price premium damage analysis.  Bayer finally produced responsive data after business hours the night before the date of this filing.  Given the timing of this production, Plaintiff does not submit a refined price premium damage analysis herewith but reserves the right do so.

Bayer's contentions to the effect that the individual inquiries necessary to allocate refunds to individuals will predominate over common issues fail. As an initial matter, "[i]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977).[14] Moreover, as set forth in the Prutsman Declaration submitted herewith, claims administrators routinely allocate class action damage awards in cases like this one. In addition, as noted above, computerized records exist that will conclusively establish individual damages for many members of the Class. As such, issues relating to the calculation of individual damages will not predominate.[15]

### 2. A Class Action Is the Only Method to Adjudicate This Controversy.

#### a. The Class's Claims Can Be Proven With Common Evidence.

In support of its argument that a class action is not a superior method to adjudicate this controversy, Bayer first argues that "determining liability will require thousands of individual trials." Opp. at 42-43. Not so. As set forth above, the claims of the Class can be proven with common evidence of Bayer's uniform claims promoting the metabolism-enhancing benefits of WeightSmart, common evidence demonstrating the falsity of those claims, and common evidence

---

[14] *Bayshore*, 2010 WL 415329, does not aid Bayer. That case involved a breach of contract claim where the proposed methodology for calculating damages presented posed intra-class conflicts that defeated typicality and adequacy. *Id.* at 37. There are no such conflicts here.

[15] Bayer's claim that Plaintiff and other Class members might have purchased other products had they known the truth about WeightSmart (Opp. at 40) misses the point. In fact, they did not know the truth about WeightSmart, bought it and overpaid for it; therefore, they are entitled to recover their overpayments. Bayer's assertion that Plaintiff could not remember how much WeightSmart he purchased or what he paid for it is contrary to the record. Plaintiff has alleged and testified that he bought WeightSmart five times. Sheehan Reply Decl., Ex. 4 (Carrera Depo.), at 207:5-16. His testimony further indicated that he purchased WeightSmart in either the 50-count or 100-count sizes, at roughly the average prices for those products. *Id.* at 101:25-102:7; 112:5-8; 117:24-118:1; 123:19-24; Sheehan Decl., Ex. 22 (demonstrating, by division of sales dollars by units, that these products sold for approximately $8 and $15, respectively).

establishing the economic injuries suffered by the Class. As WeightSmart could not, and did not, enhance anyone's metabolism, individual inquiries into Class members' medical conditions, diet, exercise and other sources of ECGC are irrelevant.[16] The only individual inquiries required relate to damage allocation, which do not justify denial of class certification.

To be sure, the mere presence of individual issues does not defeat class certification. Individual issues are "significant only if they create a situation that is less fair and efficient than other available techniques." *Danvers Motor Co., Inc. v. Ford Motor Co.,* No. 02-2197, 2007 U.S. Dist. LEXIS 7262, at *42 (D.N.J. 2007). *See also Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.,* No. 99cv741 (JLL), 2006 U.S. Dist. LEXIS 64264 at *34 (D.N.J. 2006) ("superiority analysis is not required to determine whether class action will create significant management problems, but whether certification could create relatively more management problems than any other alternative").

### b.    No Alternative Mechanism Can Address the Class's Claims.

Bayer also contends that other mechanisms exist to address Plaintiff's claims but fails to identify a viable alternative. Opp. at 44-45. In support of this contention, Bayer first disingenuously suggests that Class members pursuing individual claims would be superior to a class action. However, Bayer does not oppose class certification because it would prefer to litigate thousands of lawsuits with consumers instead of one; it opposes class certification because it would rather not be sued at all. As Bayer well knows, the alternative to the present class action litigation would not be many individual suits; it would be virtually none. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class members with small claims "would have no realistic day in court if a class action were not available"). In this circumstance, federal courts have held that a class action must be extremely unwieldy "before it can be pronounced an inferior alternative . . . to no litigation

---

[16] For these reasons, the testimony of Bayer's purported expert, Dr. Lisa Neff, is also irrelevant.

at all." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), *cert. denied*, 543 U.S. 1051 (2005).

Bayer's argument taken to its logical conclusion would necessarily mean that classes consisting of consumers that made small cash purchases are *never* appropriate for class certification. This cannot be correct.  As the Supreme Court recognized in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997):  "[T]he Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"  Indeed, Rule 23's "policy of providing a forum for small claimants is of primary importance in resolving the superiority issue." *2 Newberg* § 4:40.  Absent certification, Class Members will have no remedy for their injuries.

Bayer also suggests that regulatory and administrative bodies, such as the New Jersey Attorney General and the FTC, provide superior mechanisms for addressing the claims at issue. Opp. at 44-45.  However, the original complaint filed in this case was served upon the New Jersey Attorney General but resulted in no action.  Moreover, although the FTC successfully prosecuted an action against Bayer for the same conduct underlying this case, the relief obtained was limited to an injunction and a fine.[17]  No restitution has ever been paid.  As such, proceeding with this case as a class action for damages is superior to any regulatory or administrative remedy.[18]  In sum, the class mechanism is the only method for adjudicating this controversy.

---

[17] Bayer's claim that it "stands by WeightSmart's claims" is belied by the fact that it took WeightSmart off the market.  Opp. at 45.

[18] Bayer cites to this Court's decision in *McNair v. Synapse Group, Inc.*, No. 06-5072, 2009 U.S. Dist. LEXIS 54908, *44 (D.N.J. June 29, 2009), for its statement that Bayer's practices "could be challenged by the state versus individual subscribers, an action that would require less stringent proofs, at least under the NJCFA." Opp. at 44.  However, in *McNair*, "the attorneys general for numerous states [had] challenged policies similar to those at issue" against the defendant's parent company.  As noted above, there has been no such action taken here.

25

**III.    CONCLUSION**

For all the foregoing reasons, and those set forth in Plaintiff's initial moving papers, Plaintiff

respectfully submits that his Motion for Class Certification should be granted.

Dated:  July 1, 2011                                 Respectfully submitted,

                                                     CARELLA, BYRNE, CECCHI,
                                                     OLSTEIN, BRODY & AGNELLO
                                                     Attorneys for Plaintiff


                                                     By:_____s/Lindsey H. Taylor_____
                                                              LINDSEY H. TAYLOR


26

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of July, 2011, a copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION HAS BEEN SERVED via electronic mail upon the following counsel of record as indicated below:

Chris Landgraff
Rebecca Bacon
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street
Chicago, IL 60654
312-494-4477
312-494-4440 (fax)
chris.landgraff@bartlit-beck.com
rweinstein.bacon@bartlit-beck.com

Timothy I. Duffy
Lorna A. Dotro
Coughlin Duffy LLP
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962
(973) 267-0058
(973) 267-6442 (fax)
tduffy@coughlinduffy.com
ldotro@coughlinduffy.com

Julie L. Hussey
DLA Piper, LLP
401 B Street, Suite 1700
San Diego, CA 92101
619-699-2844
619-764-6644 (fax)
julie.hussey@dlapiper.com


s/Shujah A. Awan