UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x

GABRIEL JOSEPH CARRERA, on behalf of
himself and all others similarly situated,                :

                               Plaintiff,                :

      vs.                :

BAYER CORPORATION and BAYER
HEALTHCARE, LLC,                :

                    Defendants.                :

Civil Action No. 08-04716 (JLL)

---------------------------------------------------------x

**DECLARATION OF JAMES R. PRUTSMAN IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

I, James R. Prutsman, declare as follows:

1.  I submit this declaration for the purpose of providing the Court with information regarding the claims administration process in class actions such as this one. I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts set forth herein.

2.  I began working at Rust Consulting, Inc. ("Rust") in 2010 and my job title is senior vice president. Prior to joining Rust, I worked in a variety of roles with Epiq Class Action and Claim Solutions, most recently as a vice president. In addition, I hold an M.B.A. from the University of Oregon and a B.S. in information systems and quantitative analysis from Portland State University.

3.  For nearly 25 years, Rust has been in the business of administering class action settlements. Rust is one of the foremost class action settlement administrators in the United States. Rust has administered more than 3,000 class action settlements and has administered approximately 1,800 settlements in the last five years alone. Rust employs

approximately 550 people who work in six offices around the country.  In addition, Rust also has a subsidiary, Kinsella Media, LLC, that specializes in the design and implementation of class notice processes.  Rust and Kinsella Media frequently work together to provide complete class action administration services.

4.  Rust handles the claims administration process for class actions of all sizes and types, including consumer, antitrust, securities, insurance, healthcare, labor and employment, property, finance, telecom, and products liability class actions.  Rust also administers mass torts, and projects of similar scope in the public and business sectors.  In the past two years, Rust has handled claims administration in, among many other matters, the $65 million settlement in *In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litig.,* No. 2:08-md-1999, MDL No. 1999 (E.D. Wash.); the $624 million settlement in *In re Countrywide Financial Corp. Securities Litig.,* No. CV 07-05295 (C.D. Cal.); the $150 million settlement in *SEC v. Bank of America Corp.,* No. 09-cv-6829 & No. 10-cv-0215 (S.D.N.Y.); and the $90 million settlement in *In re Wal-Mart Wage and Hour Employment Practices Litig.,* No. 2:06-cv-00225, MDL No. 1735 (D. Nev.).  Rust has considerable experience in administering class action settlements of all types and sizes and could use this experience to develop a claims administration process in this action.

5.  Rust also aids in the distribution of funds resulting from both settlements and from trial.  In this regard, Rust follows the direction and parameters set by the Court to determine class membership and to determine the amount of the fund that should be distributed to each class member.

6. Rust has administered the claims process in a number of class actions where claimants were not required to have a receipt or some other proof of purchase documenting the purchase. Recent examples of such settlements include: *Kaiser-Flores v. Lowe's Home Centers, Inc.*, No. 5:08-cv-00045 (W.D.N.C.); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of America Litig.*, No. 09-c-0776 (N.D. Ill.); *In re Resort Condominiums Int'l, LLC*, No. 06-cv-1222 (D.N.J.); *Simonet v. SmithKline Beecham Corp.*, No. 06-1230 (D.P.R.); *Wratchford v. Household Financial Services, Inc.*, No. 03-L-541 (Ill. Cir. Ct. Madison County); *Kendrick v. Standard Fire Insurance Co.*, No. 2:06-cv-00141 (E.D. Ky.); *Troyk v. Farmers Group, Inc.*, No. GIC 836844 (Cal. Super. Ct. San Diego County); and *Ruggiero v. The Children's Place Retail Stores, Inc.*, No. 1:07-cv-02966 (N.D. Ohio).

7. In many of these cases, notice is provided to class members through published notice which could include, print notice, internet notice, and broadcast notice. Kinsella Media, Rust's division specializing in class action notice, employs sophisticated means to ensure that the class notice program is targeted to reach the intended consumers. Upon receipt of notice, class members are directed to submit claim forms to establish membership in the class and to obtain settlement funds.

8. Rust will review every claim form submitted to ensure that it contains complete and reliable information in accordance with the parameters and criteria set by the court. At the direction of the parties and/or the court, claims administrators will use a number of methods of proving class membership and in determining whether a claimant is entitled to fund distributions and in what amount. For example, the claim requirements may be organized into "tiered" levels. Using this method, the smallest claims may be approved upon the receipt of a properly completed claim form. For those class members without

proof of purchase, the claim forms would have to provide sufficient information in a sworn statement of affidavit to demonstrate that they purchased the product at issue. For the largest claims, a proof of purchase may be required in addition to a sworn statement or affidavit declaring that the information in the claim form is correct. Rust has administered a number of cases that use the tiered claim requirement approach. Some examples of this approach include *Peterson v. Trilegiant Corp.,* No. 01-L-1126 (Ill. Cir. Ct. Madison County), *Simonet v. SmithKline Beecham Corp.,* No. 06-1230 (D.P.R.), and *Wilson v. Airborne, Inc.,* No. EDCV-07-770 (C.D. Cal.).

9. Rust also employs numerous methods to detect claims that are submitted fraudulently. For example, the firm runs programmatic audits to identify duplicate claims, outliers, and other situations. In addition, Rust has successfully utilized fraud prevention techniques where by the claim form offers claim options that do not reflect valid product descriptions, prices paid, geographic locations or combinations of such factors. By providing claim options such as a very high pill count or significantly higher purchase price in this case, fraudulent claim filers would naturally be inclined to select options that they believe would increase their claim value. As such, techniques such as these can be used to effectively element fraudulent claims. In fact, we successfully implemented such an approach in connection with the $30M settlement in *Wilson v. Airborne, Inc.,* No. EDCV-07-770 (C.D. Cal.).

10. Rust will send rejection letters to any claimants that submit claim forms indicating that they are in ineligible to receive funds. The letters will detail the reason the claimant is ineligible and will advise them of their right to obtain review of the claim denial.

11. I am generally familiar with this action and believe that Rust can effectively administer

notice and claims in an efficient, effective and reliable manner.


I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.  Executed in Minneapolis , MN on June 30, 2011.


James R. Prutsman