**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANNE GRAY, | Civil Action No.: 08-4716 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| BAYER CORPORATION, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to certify a class pursuant to Federal Rule of Civil Procedure 23 filed by Plaintiff on May 13, 2011.[1]  The Court has considered the submissions of the parties in support of and in opposition to the present motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiff's motion is denied.

## I.      BACKGROUND

Defendants Bayer Corporation and Bayer Healthcare, LLC (collectively, "Bayer") develop and market "One-A-Day" vitamins.  This case involves a particular One-A-Day vitamin, "One-A-Day WeightSmart," which Bayer indicates is "designed to provide nutrients to

---

[1]On July 11, 2011, Defendants filed a letter seeking permission to file a motion to strike certain attachments to Plaintiff's reply brief in support of his motion for class certification.  (See Docket Entry No. 87.)  The Court considers Defendants' request together with Plaintiff's motion for class certification.

consumers watching their weight during diet and exercise." (Defs.' Class Cert. Opp'n Br. ["Defs.' Opp'n Br."] at 3.)  Plaintiff alleges that the packaging of One-A-Day WeightSmart falsely claims that the vitamin enhances a user's metabolism by way of an ingredient called "EGCG."  (Mem. of Law in Supp. of Pl.'s Mot. for Class Cert. ["Pl.'s Opening Br."] at 2.)

On September 22, 2008, Plaintiff Dianne Gray filed a Complaint against Bayer alleging claims based on unjust enrichment, intentional and negligent misrepresentation, and the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1, et seq., seeking to certify a class of purchasers of One-A-Day WeightSmart.  On June 8, 2009, this Court dismissed Plaintiff Gray's unjust enrichment claims with prejudice and dismissed her other claims without prejudice. (Docket Entry No. 14.)  On August 17, 2010, an Amended Complaint was filed alleging NJCFA claims and intentional and negligent misrepresentation claims against Bayer and substituting Plaintiff Gabriel Joseph Carrera for Ms. Gray as the putative class representative.  (Docket Entry No. 53.)  On May 13, 2011, Plaintiff Carrera filed the instant motion for class certification.

## II.    LEGAL STANDARD

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met."  In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir. 2008) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)); see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met—numerosity, commonality, typicality, and adequacy—and that the requirements of Rule 23(b)(1), (2), or (3) have been met.  Fed. R. Civ. P. 23; see also Hydrogen Peroxide, 552 F.3d at 309 n.6.  The plaintiff bears the burden of proof by a preponderance of the evidence.  Hydrogen

Peroxide, 552 F.3d at 320.  Here, Plaintiff moves for class certification under Rule 23(b)(3).

Rule 23(b)(3) requires that a plaintiff establish "that the questions of law or fact common to the

class members predominate over any questions affecting only individual members [

(predominance) ], and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy [ (superiority) ]."  Fed. R. Civ. P. 23(b)(3); see also

Hydrogen Peroxide, 552 F.3d at 310.

     In analyzing whether the requirements of Rule 23 have been met, "the district court must

make whatever factual and legal inquiries are necessary and must consider all relevant evidence

and arguments presented by the parties."  Hydrogen Peroxide, 552 F.3d at 307.  This is true even

if the class certification inquiry overlaps with the merits of the causes of action.  Id.

Additionally, if there is any doubt as to whether the Rule 23 requirements have been met,

certification should be denied, regardless of the area of substantive law.  Id. at 321 (discussing

the 2003 Amendments to Rule 23).

## III.  DISCUSSION

     Plaintiff moves to certify a nationwide class under Rule 23(b)(3) of "all consumers who

purchased One-A-Day WeightSmart in the United States."  (Pl.'s Opening Br. at 1.)  Plaintiff

argues that this nationwide class action should be governed by New Jersey law under the NJCFA.

Plaintiff alternatively moves to certify a statewide class under Rule 23(b)(3) of all consumers

who purchased One-A-Day WeightSmart in the State of Florida, asserting claims under the

Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. Ann. 501.201, et seq.

(Id. at 1 n.1.)  The Court begins by examining Plaintiff's proposed nationwide class under the

NJCFA.

A.      **Choice of Law**

As Plaintiff's proposed nationwide class calls for the application of state law, the Court

first looks to determine which state's law governs Plaintiff's claims.  See Phillips Petroleum Co.

v. Shutts, 472 U.S. 797, 821-23 (1985) ("Prospective class members have a due process right to

have their claims governed by the state law applicable to their dispute.").  In the Third Circuit, a

court "must apply an individualized choice of law analysis to each of plaintiff's claims."

Georgine v. Amchem Products, Inc., 83 F.3d 610, 627 (3d Cir. 1996) (citing Phillips, 472 U.S. at

823).  A federal court sitting in diversity jurisdiction must apply the forum state's choice of law

rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Warriner v. Stanton, 475

F.3d 497, 499–500 (3d Cir. 2007).  New Jersey's choice of law analysis is a two step process.

First, a court must determine if an actual conflict of law exists.  See P.V. ex rel. T.V. v. Camp

Jaycee, 962 A.2d 453, 460 (N.J. 2008); Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006).

Once it has been determined that a conflict exists, the court must then determine which state has

the "most significant relationship" to the claim at issue, as analyzed under the Restatement

(Second) of Conflict of Laws.  Camp Jaycee, 962 A.2d at 455.  This test is applied "on an

issue-by-issue basis" and "is qualitative, not quantitative."  Id. at 460.

Courts applying New Jersey law hold that § 148 of the Second Restatement provides the

relevant guidance as to which state has the "most significant relationship" to a plaintiff's fraud

claims.[2]  See, e.g., Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 462 (D.N.J. 2009); see

---

[2]The court recognizes that § 148 contemplates fraud or misrepresentation in which the
plaintiff relies on the defendant's false representation, and that, as discussed below, the NJCFA
does not require reliance on a misrepresentation.  See New Jersey Citizen Action v.
Schering-Plough Corp., 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003); see also Indian
Brand Farms, Inc. v. Novartis Crop Protection Inc., 617 F.3d 207, 219 (3d Cir. 2010).  However,

<u>also</u> <u>Nafar v. Hollywood Tanning Sys., Inc.</u>, 339 F. App'x 216, 221 (3d Cir. 2009) (unpublished).

Section 148 provides:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

>> (b) the place where the plaintiff received the representations,

>> (c) the place where the defendant made the representations,

>> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

>> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

>> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.  Courts are to evaluate these contacts in light of

the principles stated in § 6:

---

§ 148 is still the section of the Restatement most relevant to the NJCFA and the consumer fraud statutes of the other states.  <u>See</u> <u>Arlandson v. Hartz Mountain Corp.</u>, --- F. Supp. 2d ----, 2011 WL 2112494, at *12 (D.N.J. May 26, 2011).

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6; see id. § 148 cmt. b.  "Reduced to their essence, the § 6 principles are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.' "  Camp Jaycee, 962 A.2d at 463 (quoting Erny v. Estate of Merola, 792 A.2d 1208, 1217 (N.J. 2002)).

Here, the parties do not dispute that a conflict exists between the NJCFA and the consumer fraud statutes of other states.  Indeed, "[c]ourts have recognized that significant conflicts exist between the NJCFA and the consumer protection statutes of other states."  In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 63 (D.N.J. 2009) (quotation omitted); see Fink v. Ricoh Corp., 839 A.2d 942, 974–82 (N.J. Super. Ct. Law Div. 2003) ("A review of the consumer fraud statutes of the various states, and the cases decided thereunder demonstrates the existence of numerous actual conflicts on various issues between provisions of the NJCFA and those of the statutes enacted by other states.").  The parties do, however, dispute which state has the most significant relationship to Plaintiff's claims.

Plaintiff argues that New Jersey has the most significant relationship to his claims

because "all of the decisions with respect to marketing [One-A-Day WeightSmart] took place in New Jersey and all of the operative misrepresentations originated in New Jersey." (Br. Regarding Choice of Law in Supp. of Pl.'s Mot. for Class Cert. at 10.) Plaintiff contends that these decisions and misrepresentations, including the creation and approval of packaging, labeling, and marketing for One-A-Day WeightSmart, occurred at Bayer's headquarters in Morristown, New Jersey. (Id. at 1–3.) Bayer does not appear to dispute that these actions occurred in New Jersey, but nonetheless contends that because consumers purchased One-A-Day WeightSmart throughout the United States and thereby received the alleged misrepresentations in various jurisdictions other than New Jersey, the consumer fraud laws of the states where the product was purchased should apply. (Defs.' Opp'n Br. at 21.) Bayer contends that under either § 148(1) or § 148(2) of the Second Restatement, the state of purchase has the most significant relationship to Plaintiff's claims.

As an initial matter, the Court finds § 148(1) to be inapplicable here. That section applies only "when the plaintiff's action in reliance took place in the state where the false representations were made and received." Restatement (Second) of Conflict of Laws § 148(1) (emphasis added). By contrast, Section 148(2) applies where "the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made." Id. § 148(2). Plaintiff contends that Bayer's alleged misrepresentations were made in New Jersey and received by customers across the country. Bayer offers no explanation to the contrary. There is thus no evidence from which the Court could conclude that the alleged misrepresentations were "made and received" in the same state. As such, the Court applies § 148(2).

Of the factors provided in § 148(2), only factor (c) clearly points to New Jersey. There

appears to be no dispute that the Bayer made the relevant representations regarding One-A-Day WeightSmart at its office in Morristown, New Jersey.  Factors (a) and (b), the place where the putative class members received Bayer's representations and the place where the consumers acted in reliance upon those representations, both point to the individual states where the product was purchased.  Plaintiff clearly alleges that consumers purchased One-A-Day WeightSmart at retail locations nationwide, not from Bayer itself.  Factor (d), the domicile, residence, nationality, place of incorporation, and place of business of the parties, does not point directly to any particular state, as the consumers of One-A-Day WeightSmart are presumed to reside in all fifty states (and the District of Columbia), and Bayer is alleged to have done business in New Jersey.[3] Thus, while at least some class members presumably reside in New Jersey, and Bayer is alleged to have done business in New Jersey, the remainder of the putative class resides nationwide.  The Court therefore finds that factor (d) tips slightly in favor of the consumers' home states.[4]  Factors (e) and (f), "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time" and "the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant," point to the state of purchase, as the "transaction" or "contract" between the consumer and Bayer

---

[3]Bayer otherwise states that Bayer Corporation is an Indiana corporation with its headquarters located in Pittsburgh, Pennsylvania, and that Bayer Healthcare, LLC is a subsidiary of Bayer Corporation organized under the laws of Delaware and with a principal place of business in Tarrytown, New York and an office in Morristown, New Jersey.  (Ans. to Third Am. Compl. ¶¶ 4–5.)

[4]The Court acknowledges that in some instances a consumer may have purchased One-A-Day WeightSmart outside his or her state of residence.  These situations, however, appear to be too rare to meaningfully affect the choice of law analysis performed here, as Plaintiff does not allege that a significant portion of the putative class purchased One-A-Day WeightSmart away from their home states.

cannot be said to have been consummated until the product was accessed and purchased by the consumer.

In sum, factors (a), (b), (e), (f), and, to a limited extent, factor (d), point to the states of purchase, while only factor (c) points to New Jersey.  However, the Court may not simply count up the § 148(2) contacts and apply the law of the jurisdiction with the greater tally.  See David B. Lilly Co., Inc. v. Fisher, 18 F.3d 1112, 1119 (3d Cir. 1994).  Instead, the Court must examine the § 148(2) contacts in light of the principles stated in § 6, while considering "whether some other state has a greater interest in the determination of the particular issue than the state selected on the basis of the [§ 148(2)] contacts."  Restatement (Second) of Conflict of Laws § 148 cmt. b. "The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved."[5]  Id.  Indeed, this Court has noted that the NJCFA "could be applied to an out-of-state consumer under certain circumstances."  Cooper v. Samsung Elecs.

_____

[5]The New Jersey Supreme Court has also suggested that the factors under § 145 of the Second Restatement, which apply to tort claims generally, should also be considered.  See Camp Jaycee, 962 A.2d at 467–68 ("If the presumptive rule points to a specific jurisdiction, the court will look to the remaining contacts in section 145 and the principles embodied in section 6 of the Restatement to determine whether another state has a more significant relationship to the parties or issues."); see also Clark v. Prudential Ins. Co. of America, No. 08-6197, 2009 WL 2959801, at *11 (D.N.J. Sept. 15, 2009) (considering § 145 in addition to § 148 and § 6).  The first three factors under § 145(2) largely overlap with factors already provided in § 148(2), and the fourth factor, "the place where the relationship, if any, between the parties is centered" does not implicate any particular state or states here, as Bayer's alleged conduct occurred in New Jersey, but the product at issue was allegedly purchased nationwide.  As such, the Court concludes that consideration of § 145 does not meaningfully alter the contacts that the Court has already found under § 148.  See Clark, 2009 WL 2959801, at *11 (concluding that consideration of "the factors of § 145(2) of the Restatement does not drastically change the result after the analysis conducted under the factors of § 148(2).").

America, Inc., No. 07-3853, 2008 WL 4513924, at *7 (D.N.J. Sept. 30, 2008) (citing Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 547 (D.N.J. 1998)).

Here, the NJCFA serves both a compensatory and deterrent function. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 463 (N.J. 1994) ("Although one purpose of the legislation is clearly remedial in that it seeks to compensate a victim's loss, the [NJCFA] also punishes the wrongdoer by awarding a victim treble damages, attorneys' fees, filing fees, and costs."). As Bayer's alleged misrepresentations occurred in New Jersey, application of the NJCFA here would further the legislative goal of deterring wrongful conduct within the state. Furthermore, it has been noted that "[a] number of states, including Maine, Oklahoma, and West Virginia, limit recovery or do not allow for punitive damages in consumer fraud actions," while other states, "such as Connecticut, Delaware, Kentucky, and Oregon, place no limits on the punitive damages available in consumer fraud actions." Mercedes-Benz, 257 F.R.D. at 64 n.7, n.8. This suggests that if the NJCFA were not applied to certain out-of-state consumers, a company based in New Jersey could potentially defraud those consumers but escape the imposition of punitive damages.

To apply the NJCFA to the out-of-state consumers in this case, however, would be to ignore the compensatory interests of potentially fifty other jurisdictions. Simply because New Jersey has struck a particular balance between consumer protection and the promotion of business within its borders does not suggest that its interest in deterrence should displace the policy goals of its fellow states. Those states have instead struck their own legislative balances, awarding compensation based on differing standards of, inter alia, intent, causation, reliance, and damages. See Fink, 839 A.2d at 974–83 (performing a thorough review of the relevant statutes). Here, individuals are alleged to have purchased vitamins at local retailers across the country.

The consumers here had no direct involvement with Bayer in New Jersey and transacted only with third parties located nationwide.  Plaintiff's claims thus have substantial contacts with the states where One-A-Day WeightSmart was purchased, and application of those states' consumer protection laws would further their interest in compensating purchasers for harms they may have suffered.  New Jersey, by contrast, has no interest in compensating out-of-state consumers and has contacts with this litigation only by way of the location of Bayer's headquarters.  The Court thus sees little reason to conclude that New Jersey's deterrent interest with respect to one party should be elevated above its fellow states' compensatory interests with respect to an entire class.  Indeed, the "interests of interstate comity" and the "competing interests of the states" counsel against the blanket application of one state's law over the laws of other interested states.  Finally, while the other principles provided under § 6 and in Camp Jaycee, such as the interests of judicial administration and efficiency, are surely applicable here, they "must yield to strong state interests implicated by the remaining factors."  Fu v. Fu, 733 A.2d 1133, 1142 (N.J. 1999); see Chin v. Chrysler Corp., 182 F.R.D. 448, 457 (D.N.J. 1998) ("While it might be desirable for the sake of efficiency to settle upon one state, such as New Jersey, and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class members case before certification.").[6]  Thus, analyzing the contacts found under § 148 in light the principles of § 6, the Court concludes that the states where the putative class members purchased One-A-Day WeightSmart have the most significant relationship to Plaintiff's claims.

---

[6]The "interests of the parties" are of no moment here, because while this factor "is of extreme importance in the field of contracts," it "ordinarily plays little or no part in a choice-of-law question in the field of torts."  Fu, 733 A.2d at 1141.

This Court's conclusion accords with several recent decisions from this District.  See, e.g., Arlandson v. Hartz Mountain Corp., --- F. Supp. 2d ----, 2011 WL 2112494, at *12–13 (D.N.J. May 26, 2011) (applying § 148(2) to conclude that the plaintiffs' home states had the most significant relationship to their consumer fraud claims where the defendants' headquarters were located in New Jersey but "Plaintiffs received and relied upon the alleged misrepresentations in their home states, the product is located in the Plaintiffs' home states, and the performance of the contract was rendered in Plaintiffs' home states"); Agostino v. Quest Diagnostics Inc., No. 04-4362, 2010 WL 5392688, at *5–10 (D.N.J. Dec. 22, 2010) (applying § 148(2) to conclude that "the Court is not satisfied that New Jersey's interest in deterring certain conduct by its home state businesses, as reflected in the enactment of the Consumer Fraud Act, warrants a practically willy-nilly imposition of New Jersey's law nationwide in disregard of the laws of other jurisdictions and the potential consequences of that blanket application of one state's laws to individual claimants."); In re Philips/Magnavox Television Litigation, No. 09-3072, 2010 WL 3522787, at *8–9 (D.N.J. Sept. 1, 2010).  Indeed, this Court has ruled in three other cases that the NJCFA did not apply to certain out-of-state consumers, even when the defendant had operations in New Jersey.  See Demmick v. Cellco P'ship, No. 06-2163, 2010 WL 3636216, at *4–5 (D.N.J. Sept. 8, 2010) (denying class certification); Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc., No. 08-5380, 2010 WL 1424014, at *3–4 (D.N.J. Apr. 8, 2010) (ruling on a motion to dismiss); Cooper, 2008 WL 4513924, at *6–7 (ruling on a motion to dismiss in a putative class action), aff'd, 374 F. App'x 250, 255 (3d Cir. 2010) ("The transaction in question bears no relationship to New Jersey other than the location of [the defendant's] headquarters.").

Nonetheless, it has been acknowledged that "[t]here is a brewing issue in the Circuit whether to apply the NJCFA to a class action." Laney v. Am. Standard Cos., Inc., No. 07-3991, 2010 WL 3810637, at *20 (D.N.J. Sept. 23, 2010) (applying § 148(1)).  Plaintiff points to three cases from this District to support his contention that the NJCFA should apply to the out-of-state consumers here.  However, two of those cases, Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233 (D.N.J. 2008), and Dal Ponte v. Am. Mortg. Exp. Corp., No. 04-2152, 2006 WL 2403982 (D.N.J. Aug. 17, 2006), were decided before the New Jersey Supreme Court's decision in Camp Jaycee and therefore did not apply § 148 in their choice of law analyses.  See Camp Jaycee, 962 A.2d at 460 (explicitly replacing its "government interest" analysis with the analysis under the Second Restatement); see also Cooper, 374 F. App'x at 254 n.4 (noting that Camp Jaycee had not been issued at the time this Court conducted its choice of law analysis).  Instead, In re Mercedes-Benz Tele Aid Contract Litigation appears to be the only case from this District to have applied § 148(2) to hold the NJCFA applicable to out-of-state consumers.  See 257 F.R.D. at 69; see also In re Mercedes-Benz Tele Aid Contract Litig., 267 F.R.D. 113, 123–28 (D.N.J. 2010) (denying motion to decertify the class).  While this Court agrees with the court in Mercedes-Benz that due consideration must be given to New Jersey's deterrent interest in enforcing the NJCFA, see 257 F.R.D. at 67–69, the Court concludes that, given the substantial contacts between Plaintiff's claims and the states where One-A-Day WeightSmart was purchased, to disregard the individual laws of those states in favor of a blanket application of New Jersey law would ignore their strong compensatory interest in this matter and would threaten to upset the balance of our federal system.  The Court thus follows the weight of authority counseling against the application of the NJCFA to out-of-state consumers.

**B.      Proposed Nationwide Class**

Under Rule 23(b)(3), "if proof of the essential elements of the cause of action require

individual treatment, then there cannot be a predominance of 'questions of law and fact common

to the members of the class.' " In re Linerboard Antitrust Litig., 305 F.3d 145, 156 (3d Cir.

2002) (quoting Fed. R. Civ. P. 23(b)(3)).  Thus, a court must consider "whether variations in

state laws present the types of insuperable obstacles which render class action litigation

unmanageable." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004).

"Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal

cause of action, differences in state law will 'compound the [ ] disparities' among class members

from the different states." Chin, 182 F.R.D. at 453 (alteration in original) (quoting Amchem

Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)).  It is thus the plaintiff's burden to

"credibly demonstrate, through an extensive analysis of state law variances, that class

certification does not present insuperable obstacles." Id. (quotations omitted).

Here, Plaintiff has failed to carry his burden.  This Court has already ruled that the

consumer fraud laws of the states where the putative class members purchased One-A-Day

WeightSmart apply to Plaintiff's claims.  As such, the Court would need to vary its application of

the controlling law depending on the state of purchase.  As noted above, and as detailed by the

court in Fink, 839 A.2d at 974–82, significant variation exists among the consumer fraud laws of

the various states.  Thus, even if, as Plaintiff suggests, common questions of fact exist regarding

the conduct of Bayer, (see Pl.'s Opening Br. at 22, 24–26), the Court would be required to apply

distinct standards of, inter alia, intent, causation, reliance, and damages in order to adjudicate

Plaintiff's claims under each state's consumer fraud law.  Plaintiff has not demonstrated, nor

does Plaintiff even contend, that common questions of law and fact predominate when the law of the state of purchase is applied to his consumer fraud claims.  As such, the Court concludes that Plaintiff has failed to satisfy the predominance requirement of Rule 23(b)(3).

For similar reasons, the proposed nationwide class fails to satisfy Rule 23(b)(3)'s superiority requirement.  Litigating Plaintiff's claims based on law from potentially fifty-one different jurisdictions would likely require a multitude of mini-trials to determine Bayer's liability to each statewide group of consumers.  Such a procedure would be an inefficient use of judicial resources and would "defeat the purported economies of class treatment."  Chin, 182 F.R.D. at 462 (quoting In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 224 (E.D. La. 1998)).  The Court therefore concludes that Plaintiff's proposed nationwide class fails both requirements under Rule 23(b)(3).  As such, the Court need not consider whether such a class satisfies the prerequisites under Rule 23(a).  See Chin, 182 F.R.D. at 453.

**C.      Proposed Florida Class**

In a footnote to Plaintiff's opening brief, he states, "Should the Court find that New Jersey law does not apply, Plaintiff moves in the alternative for certification of a class of all consumers who purchased One-A-Day WeightSmart in the State of Florida to assert claims for violation of [the FDUTPA]."  (Pl.'s Opening Br. at 1 n.1.)  Bayer responds that such a class in not ascertainable, because claims under the FDUTPA are subject to a four-year statute of limitations, and the claims of some of proposed Florida class members would be barred by that limitations period.  (Defs.' Opp'n Br. at 23 (citing Fla. Stat. Ann. 95.11(3)(f)).)  The initial Complaint in this action was filed on September 22, 2008, but Plaintiff contends that One-A-Day WeightSmart was brought to market in "late 2002."  (Pl.'s Opening Br. at 7–8.)  Bayer thus

argues that, for products purchased between late 2002 and September 22, 2004, an individualized inquiry must be conducted into the dates on which the putative Florida class members purchased One-A-Day WeightSmart.  (Defs.' Opp'n Br. at 24.)  Such an inquiry, Bayer contends, is not administratively feasible, because many putative class members lack of proofs of purchase and have insufficient memories of the dates on which such purchases took place.  (Id.)  Plaintiff responds that such a class would indeed be ascertainable, citing Fitzpatrick v. General Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011), but Plaintiff offers no supporting analysis.[7]  (Reply Mem. of Law in Supp. of Pl.'s Mot. for Class Cert. ["Pl.'s Reply Br."] at 11 n.6.)  Plaintiff does, however, argue that his proposed nationwide class could be ascertained by way of affidavits supplied by the class members or through electronic records kept by retailers in connection with their loyalty card programs and online sales systems.  (Id. at 2–3.)

However, even if the date and location at which each consumer purchased One-A-Day WeightSmart could be determined based on such proofs, Plaintiff has devoted no more than two short footnotes to arguing, in a conclusory manner, that certification of his proposed Florida class is permissible under Rule 23.  (See Pl.'s Opening Br. at 1 n.1; Pl.'s Reply Br. at 11 n.6.)  While the Court suspects that many of the parties' arguments with respect to certification of the

---

[7]Furthermore, Plaintiff's reliance on Fitzpatrick appears to be misplaced.  In that case, the Eleventh Circuit reversed an order of the district court certifying a class under the FDUTPA, but while generally approving of the lower court's analysis.  See 635 F.3d at 1283 (disagreeing only with the class definition adopted in the district court's order).  The district court's class certification opinion notes that the defendant did not begin selling and marketing the subject product until July 2007.  See Fitzpatrick v. General Mills, Inc., 263 F.R.D. 687, 690–91 (S.D. Fla. 2010).  The district court, ruling in 2010, therefore appears to have had no reason to consider the effect of any four-year limitations period under the FDUTPA.  However, when a limitations period is applicable, its effect may indeed weigh against class certification.  See In re Community Bank of Northern Virginia, 622 F.3d 275, 293–95 (3d Cir. 2010).

proposed nationwide class would also apply to certification of a statewide class, the parties have

provided no guidance as to where such overlap exists.  As such, Plaintiff's motion for

certification of a Florida class is denied, but without prejudice to Plaintiff's right to move for

certification of that statewide class, only, at a later date.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for class certification is denied.  Bayer's

request for leave to file a motion to strike certain attachments to Plaintiff's reply brief is therefore

denied as moot.  Plaintiff will be granted leave to file a motion for class certification with respect

to his proposed Florida class only.  An appropriate Order accompanies this Opinion.

DATED: July 21, 2011                    /s/ Jose L. Linares                       
                                        JOSE L. LINARES
                                        UNITED STATES DISTRICT JUDGE