NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GABRIEL JOSEPH CARRERA, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION and BAYER HEALTHCARE LLC,<br><br>　　　　　　　Defendants. | Civil Action No.: 08-4716 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court on a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure filed by Plaintiff Gabriel Joseph Carrera ("Plaintiff" or "Carrera"). This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for class certification is GRANTED.

**I. BACKGROUND**

Plaintiff characterizes this as a "consumer protection case [arising] from the uniform deceptive marketing of WeightSmart by defendants Bayer Corporation and Bayer HealthCare, LLC," and seeks recovery pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et. seq. ("FDUTPA").

The underlying facts are detailed more fully in the Court's Opinion dated July 21, 2011. Defendants Bayer Corp. and Bayer Healthcare, Inc. (collectively "Bayer" or "Defendants") are the developers and marketers of a multivitamin called "One-A-Day WeightSmart" ("WeightSmart"). Bayer stopped selling WeightSmart in January 2007. (Defs.' Class Certification Opp'n. Br., 9) (hereinafter "Def's Br."). Plaintiff contends that "Bayer falsely claimed that WeightSmart enhanced metabolism by its inclusion of Epigallocatechin gallate ("EGCG"), a green tea extract" when Bayer knew that WeightSmart did not do so. (Br. in Supp. of Pl.'s Mot. for Certification of a Florida Class, 1) (hereinafter "Pl.'s Opening Br."). Plaintiff claims, for example, that WeightSmart packaging contained multiple statements such as "Complete Multivitamin Plus More to: . . . Enhance Your Metabolism with EGCG (natural green tea extract)"; "Helps to keep your metabolism going strong"; "Used as part of a healthy lifestyle that includes a balanced diet and exercise, One-A-Day WeightSmart is a safe way to supplement the effort you are making to better control your weight"; and "Complete Multivitamin specially designed to help you while you're controlling your weight . . ." (Pl.'s Opening Br., 3-4; Sheehan Decl. Ex. 4). Additionally, Plaintiff states that Bayer made similar claims in advertisements throughout the relevant time period. (Pl.'s Opening Br., 4; Sheehan Decl. Ex. 4).

The Court previously denied Plaintiff's motion to certify a nationwide class of "all consumers who purchased One-A-Day WeightSmart in the United States," or, in the alternative, a statewide class of "all consumers who purchased One-A-Day WeightSmart in the State of Florida, asserting claims under the [FDUTPA]." (Docket Entry No. 89, 3). The Court denied certification of the Florida class because Plaintiff argued for certification of the Florida class in a conclusory manner in just two short footnotes. Id. at 16-17. Plaintiff presently seeks to certify a

class of all persons who purchased WeightSmart in the State of Florida.  (Pl.'s Opening Br., 1).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23, a plaintiff must establish all the requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy–in addition to at least one of the requirements of Rule 23(b).  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2548 (2011); Fed. R. Civ. P. 23.  Here, Plaintiff again moves for class certification under Rule 23(b)(3), which requires a plaintiff to establish "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with the [Rule 23 requirements]–that is, he must be prepared to prove that there are <u>in</u> <u>fact</u> sufficiently numerous parties, common questions of law or fact, etc.*"* <u>Walmart</u>, 131 S.Ct. at 2551 (emphasis in original).  Further, the plaintiff must do so by a preponderance of the evidence.  <u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d 305, 320 (3d Cir. 2008).  In addition, "[i]n reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 168 (3d Cir. 2001) ("[C]lass certification may require courts to answer questions that are often 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" and in such a case, "courts may 'delve beyond the pleadings to determine whether the requirements for class certification are

satisfied.'") (citations omitted).  A motion for class certification should only be granted if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  Wal-mart, 131 S.Ct. at 2251.  However, certification should be denied if there is any doubt as to whether the above stated requirements have been met, regardless of the area of substantive law.  Hydrogen Peroxide, 552 F.3d. at 321.

**III. DISCUSSION**

Plaintiff moves to certify a class of "all persons who purchased a multivitam called 'One-A-Day WeightSmart' in the State of Florida."  (Pl.'s Br., 1).  Plaintiff argues that WeightSmart contained substantially less than the effective dose of ECGC and Bayer's claim that representations were based "on an analogy to the 'good source' regulation established for nutrients in dietary supplements" is inherently flawed because WeightSmart purported to enhance metabolism, not contain a good source of ECGC.  (Pl.'s Br., 9-10).  Most significantly, Plaintiff states that there is common evidence that no scientific evidence exists to support the claim that "WeightSmart's dose of EGCG enhances metabolism," and Plaintiff argues that Bayer concedes as such. (Plaintiff Opening Br., 10).

Bayer refutes this claim and states that Plaintiff's expert, Dr. Gurley, "ignored studies substantiating Bayer's claims and reaches the unexplained conclusion that EGCG does not enhance metabolism at any dose – despite twenty-seven peer-reviewed studies to the contrary," and that "the inquiry into metabolic effect depends on a host of individual-specific factors," including the dosage and frequency of use.  (Defs.' Br., 25-26).

4

However, "[w]hen a district court properly considers an issue overlapping the merits in the course of determining whether a Rule 23 requirement is met, it does not do so in order to predict which party will prevail on the merits.  Thus, merits inquiry is not permissible 'when the merits issue is unrelated to a Rule 23 requirement.'" In re Community Bank of Northern Virginia, 622 F.3d 275, 294 (3d Cir. 2010) (citations omitted).  Therefore, determining whether WeightSmart's representations about the product deceived consumers or accurately stated that WeightSmart was a good source of EGCG, and the basis for expert opinions are not appropriate at this juncture.  "Stated another way, it remains true that '[i]n determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action . . . but rather whether the requirements of Rule 23 are met.'" Id. (emphasis in original) (citations omitted).

The Court now turns to Rule 23 analysis.  As the requirements of Rule 23(b)(3) are more stringent than the commonality inquiry under Rule 23(a), the Court will begin its analysis there. See  Newton, 259 F.3d at 188.

**A. Rule 23(b)(3)**

"A class seeking money damages must also satisfy the [Rule 23](b)(3) requirements of predominance and superiority-namely, whether common questions of law or fact predominate and whether the class action represents the superior method for adjudicating the case." Newton, 259 F.3d at 181 (emphasis in original).  Further, with regard to predominance, the inquiry measures "whether the class is sufficiently cohesive to warrant certification.  Unlike commonality, predominance is significantly more demanding, requiring more than a common claim." Newton, 259 F.3d 188 (citations omitted).  In determining whether the predominance

5

and superiority requirements are met, a court should consider the following: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, the parties do not point to any cause for concern or raise any issues regarding the first three factors. However, the fourth consideration, the likely difficulties in managing a class action, warrants close attention. Defendant argues that the class is unascertainable and that consumers do not possess objective proof that they purchased WeightSmart, particularly because the most common documentary record of purchase would be some sort of proof of purchase such as a receipt. (Defs.' Br., 9). In light of the fact that Bayer stopped selling WeightSmart in January of 2007, a potential class-member would have had to keep such a proof of purchase for many years. Id. Further, Defendants rely on Plaintiff Carrera's deposition testimony to argue that purchasers often forget details of minor purchases, such as vitamins. For example, Carrera could not remember the name of other vitamins he bought, confused the packaging with other One-A-Day vitamin products, and testified that he bought WeightSmart after it was already off the market. (Def's Br., 11-15). In light of the fact that retailers also sold knock-offs that contained EGCG and the packing was similar to WeightSmart Advanced, which is not part of the current litigation, Defendants argue that the class is unascertainable. (Defs.' Br., 14-15).

Plaintiff concedes that identifying consumers who bought WeightSmart during the relevant time period will not be easy. However, Plaintiff urges that potential class members'

6

lack of a proof of purchase is not an insurmountable problem because "class membership in consumer actions [do] not hinge on consumer retention of receipts." (Pl.'s Reply Br., 2-3). Plaintiff submits that records from loyalty card programs and online purchasing will assist in establishing a majority of class membership, and that claim forms or affidavits are sufficient to establish the remaining class membership. (Pl.'s Reply Br., 2). As provided by the Eleventh Circuit, the manageability inquiry "will rarely, if ever, be in itself sufficient to prevent certification of a class. 'Courts are generally reluctant to deny class certification based on speculative problems with case management.'" Klay v. Humana, Inc., 382 F.3d 1241, 1272-73 (11th Cir. 2004); see Alba Conte & Herbert B. Newberg, 3 Newberg on Class Actions § 10:12 (4th ed. 2002) ("Methods of claim verification may also vary with the ease of documenting claims by individual members, and also with the size of the claims involved. A simple statement or affidavit may be sufficient where claims are small or are not amenable to ready verification."). The Court finds that this obstacle is not insurmountable due, in part, to the fact that the claims involved will be relatively small and Plaintiff points to methods to verify claims. See (Pl.'s Br., 2-3; Decl. of James R. Prutsman).

The statute of limitations also raises a question of whether individual inquiries will destroy predominance. As the Court stated in July 21, 2011 opinion, when a limitations period is applicable, its effect may indeed weigh against class certification. Cmty. Bank of N. Virginia, 622 F.3d at 293-95. However, as explained by the Third Circuit, the presence of individual statute of limitations issues does not per se preclude class certification:

> Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class

7

> members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3). Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test.

In re Linerboard Antitrust Litig., 305 F.3d 145, 162 (3d Cir. 2002) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)) (citations omitted). Therefore, notwithstanding the necessary individual inquiries into when plaintiffs purchased WeightSmart, common issues will predominate "because 'the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.'" Id. (quoting In re Flat Glass, 191 F.R.D. 472 (W.D. Pa. 1999) (finding that despite individual questions, defendant's fraudulent concealment was the predominating question). Here, the predominant issue will be whether Bayer employed deceptive advertising and marketing in violation of the FDUTPA.

Finally, "[t]o determine whether the claims alleged by the putative class meet the requirements for class certification, [a court] must first examine the underlying cause of action . . . ." Newton, 259 F.3d at 172. "If proof of the essential elements of the cause of action requires individual treatment, the class certification is unsuitable." Id.

As the FDUTPA is a Florida law, absent an indication that the state's highest court would rule otherwise, this Court is bound to follow Florida appellate court decisions interpreting that law. Moss v. Walgreen Co., 765 F. Supp. 2d 1363, 1366 (S.D. Fla. 2011) (citing Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1256 (11th Cir. 2009)). Recently, in Moss v. Walgreen Co., the District Court for the Southern District of Florida recognized a tension

between interpretations of the FDUTPA with regard to whether there is a causation element.[1] 765 F.Supp.2d at 1367. In another recent case, Fitzpatrick v. General Mills, Inc., the Eleventh Circuit interpreted the FDUTPA as not requiring individual reliance. 635 F.3d 1279, 1283 (11th Cir. 2011) (relying on Davis v. Powertel, Inc., 776 So.2d 971, 973 (Fla. 1st DCA 2000)). Instead, "should the class prevail on the liability issue, each putative class member would only need to show that he or she paid a premium for [the product at issue] to be entitled to damages under the FDUTPA." Id.

Here, with regard to the damages element, Defendants argue that it is not feasible to determine whether and how much individuals were damaged because potential plaintiffs purchased the product for different reasons, including, for example, weight maintenance or as a dietary supplement, and purchased the product at different prices set by the retailer. However, as stated by the Eleventh Circuit, the FDUTPA does not require individual reliance on representations or omissions at issue, rather "a plaintiff must simply prove that an objective reasonable person would have been deceived" and that class members paid a premium for the product. Id.

Further, as argued by Plaintiff, the Southern District of Florida recently found that individual damage issues did not predominate in a very similar case under the FDUTPA, Fitzpatrick v. General Mills, 263 F.R.D. 687, 701 (S.D. Fla. 2010), vacated on other grounds,

---

[1] Moss v. Walgreen Co., 765 F.Supp.2d 1363, 1367 (S.D.Fla. 2011); see Davis v. Powertel, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000) ("The [FDUTPA] provides a cause of action 'against a party who has engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' but it does not define the elements of such an action.'"); see c.f., Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. Dis. Ct. App. 2006) ("A consumer claim for damages under the FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages"). In Moss, the District Court found Davis v. Powertel to be particularly persuasive because it was in accordance with the purpose of the FDUTPA. 765 F. Supp. 2d at 1367.

9

635 F.3d 1279 (11th Cir. 2011).[2]  There, the product at issue was a yogurt that purported to provide digestive health benefits.  The court wrote: "Whether a particular putative class member paid a premium for Yo-Plus is an individualized issue not subject to classwide proof.  However, Rule 23(b)'s predominance requirement can be satisfied even when there are individualized damage issues." Id. (citing Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003).  Further, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).  Possible solutions include the following:

> '(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.'

Id. (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001); see also Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 57 (3d Cir. 1994) ("[c]lasses can be certified for certain particularlized issues").

In addition, Defendants argue that a class action is not the superior method for adjudicating this matter because of "significant manageability problems to ensure a fair trial on liability." (Defs.' Opp'n Br., 33).  While this case poses management challenges, as discussed above, the Court disagrees that the fairness of a trial on liability will be impacted because the liability inquiry does not take reliance into account.

---

[2] The Eleventh Circuit found that the district court's analysis was sound and that certifying a class defined as "all persons who purchased Yo-Plus in the State of Florida" would have been proper, but despite proper analysis, the court there improperly defined the class as "all persons who purchased Yo-Plus in the State of Florida to obtain its claimed digestive health benefit," which impermissibly took individual issues into account.  635 F.3d at 1283.

Finally, the parties dispute whether a class action is the superior method to address Plaintiff's claims. Plaintiff states that because each claim is small, a class action is "the only means by which these claims will be heard." (Pl.'s Br., 31). Defendants argue that other mechanisms exist, such as individual suits because Plaintiff believes he is entitled to attorneys' fees, or bringing a claim before a regulatory or administrative body. With regard to that point, Plaintiff states that the "original complaint filed in this case was served upon the New Jersey Attorney General but resulted in no action" and that despite a successful prosecution by the FTC against Bayer for the same conduct at issue here, no restitution was paid. (Pl.'s Reply, 17).

"Contending each individual claim is so small that only a class action will provide a remedy . . . 'by itself is insufficient to overcome the hurdles of predominance and superiority and efficient and fair management of a trial, which Rule 23(b) requires." Newton, 259 F.3d at 191 (citations omitted). However, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative-no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied-to no litigation at all." Carnegie, 376 F.3d at 661. Here, as discussed above, although there are management challenges, the putative class is not so unwieldy as to refuse certification on those grounds alone. Therefore, the Court finds that Carrera meets his burden with regard to the predominance and superiority requirements set forth in Rule 23(b).

**B. Rule 23(a)**

As discussed above, Plaintiff must establish all the requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy. Each will be discussed in turn.

**1. Numerosity**

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the precise number of class members is unknown, but Plaintiff argues that "numerosity cannot be disputed as class members purchased approximately $14 million worth of WeightSmart during the relevant time period." (Pl.'s Br., 20). Indeed, Defendants do not argue that the numerosity requirement is not satisfied. Thus, particularly in light of the fact that putative class members purchased millions of dollars worth of WeightSmart and given the relatively small price of vitamins, the proposed class is large enough that joinder of all members is impracticable.

**2. Commonality**

As stated by the United States Supreme Court in Wal-Mart v. Dukes, the language of the commonality requirement in Rule 23(a) "is easy to misread, since any competently crafted class complaint literally raises common questions." 131 S.Ct. at 2551 (internal quotations omitted). However, the provision requires that plaintiffs suffered the same injury, not "merely that they have all suffered a violation of the same provision of law . . . [t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. " Id. Further, "[t]he commonality requirement will be satisfied if the

named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Newton, 259 F.3d 184.

Plaintiff argues that there is "common evidence to prove on a class-wide basis that Bayer's uniform statements regarding the metabolism-enhancing benefits of WeightSmart were in fact deceptive." (Pl.'s Br., 9). Further, Carrera states that "[p]roving these claims does not depend on proving that Plaintiff or other members of the Class failed to lose weight while taking WeightSmart. Rather, proving these claims depends on whether or not WeightSmart had metabolism-enhancing properties, which it clearly did not." (Pl.'s Reply Br., 6).

In response, Defendants argue that the proposed class "lacks commonality because class members were influenced by different messages, had different medical conditions and medications that affected their response to WeightSmart, and paid different amounts for the products." (Defs.' Opp'n Br., 20). Defendants also argue that "Carrera attempts to bypass individual causation by producing testimony of a proposed scientific expert even though Bayer has the right to challenge causation on a class-member-by-class-member basis." Id. However, as discussed above in the Court's predominance analysis, the FDUTPA does not require proof of individual reliance.

Here, the commonality element is satisfied because, at a minimum, whether or not WeightSmart contained an effective dose of ECGC such that it was capable of enhancing metabolism is a common issue at the heart of this matter. In addition, whether a reasonable person would rely on Bayer's representations regarding WeightSmart involves common issues of law and fact.

Defendants argue that the individual inquiries required to assess liability and damages destroy commonality. However, for the reasons discussed in the Court's predominance analysis, putative class members share questions of law and fact.

**3. Typicality**

"The typicality inquiry here centers on whether 'the named plaintiff[']s] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" Newton, 259 F.3d at 183 (quoting Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985). The Third Circuit explains as follows:

> The criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees' . . . Our jurisprudence 'assures that a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice' . . . As a result, we have concluded that the requirement 'does not mandate that all putative class members share identical claims,' because 'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or when the claim arises from the same practice or course of conduct.'

Id. at 183-184 (internal citations omitted).

Defendants argue that Carrera is not typical of other consumers because he has health conditions, such as diabetes and hypogonadism, a high-fat diet, a limited ability to exercise, and lacks an injury because he lost weight while taking WeightSmart.[3] (Defs.' Br., 4). However, as this is a consumer protection case where plaintiffs claim that Bayer engaged in deceptive

---

[3] Defendants additionally argue that Plaintiff lacks standing since there is no injury on account of his weight loss while taking WeightSmart. However, this argument is without merit as this is a consumer protection case, the complained-of injury is an economic injury. Specifically, that Plaintiff "and other members of the Class were injured because they paid a premium price for WeightSmart, a product marketed as having metabolism-enhancing benefits, but received a product without those benefits." (Pl.'s Reply Br., 6).

marketing practices regarding an ineffective product, WeightSmart, any single plaintiff's health issues, lifestyle or weight loss, is irrelevant. Rather, Carrera's individual circumstances or legal theories are not markedly different from those of the other putative class members because they will all advance the same theory based on the same course of conduct.

**4. Adequacy**

The adequacy inquiry "requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." Newton, 259 F.3d at 186. As to the adequacy of the class representative, the Third Circuit stated that "the adequacy inquiry seeks to uncover conflicts of interest between named parties and the class they seek to represent." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 602 (3d Cir. 2009) (internal quotations omitted). Further, "[b]ecause of the similarity of [the typicality and adequacy] inquiries, certain questions–like whether a unique defense should defeat class certification–are relevant under both." Id. Neither party points to any evidence that the class representative's interests conflict with those of the putative class. Thus, for the reasons discussed above, the Court also finds that Carrera is an adequate representative.

Next, "the adequacy inquiry 'tests the qualifications of the counsel to represent the class." Id. In determining the adequacy of class counsel, a court should look to the non-exclusive factors of Federal Rule of Civil Procedure 23(g)(1)(A), which include: (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3)

"counsel's knowledge of the applicable law, " and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Cmty. Bank of N. Virginia, 622 F.3d at 292. Plaintiff's briefs and accompanying declarations demonstrate that counsel is capable of fairly and adequately representing the class, and Defendants do not dispute the adequacy of the proposed class counsel. Thus, the Court finds that the adequacy requirement is met as well.

**IV. CONCLUSION**

The Court finds that Plaintiff has satisfied the burden of demonstrating that the Rule 23 certification requirements are met for a class defined as: all persons who purchased a multivitamin called 'One-A-Day WeightSmart' in the State of Florida. Thus, Plaintiff's motion to certify a class pursuant to Rule 23(b)(3) is granted.

An appropriate Order accompanies this Opinion.

Dated: November 22, 2011

                                            /s/ Jose L. Linares
                                            Jose L. Linares
                                            United States District Judge